# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

DOUGLAS I. HORNSBY, ADMINISTRATOR OF THE
ESTATE OF CYNTHIA GARY,

    Plaintiff,

v.

UNITED STATES of AMERICA,

METRO MACHINE, CORP. d/b/a
GENERAL DYNAMICS NASSCO-NORFOLK,

HARBOR INDUSTRIAL SERVICES, INC.,

COASTAL MECHNICAL SYSTEMS, LLC,

ADVANCED INTEGRATED TECHNOLOGIES, LLC,

KD SHIPYARD REPAIRS, LLC

and

CECO ENVIRONMENTAL CORP.,

    Defendants.

Case No. 2:22-cv-427

## AFFIDAVIT OF YEIDY CORDERO

The undersigned, Yeidy Cordero, being duly sworn, and to the best of her knowledge, information, and belief, affirms, deposes, and states as follows:

1. I am over the age of 18 and I am competent in all respects to make this Affidavit. If called to testify, I would testify to the facts in this Affidavit from my personal knowledge.

2. The statements contained in this Affidavit are true and correct, based upon my personal knowledge acquired in my capacity as President, Blue Staffing Agency, LLC (hereinafter, "Blue") and from research performed by me through business records, or by others at my request.

3. Blue is co-owned by me, Yeidy Cordero, owning 50%, and by Rolando Fajardo, President of Harbor Industrial Services, Inc. (hereinafter, "Harbor"), owning 50%.

4. Blue is in the business of furnishing skilled temporary labor to other marine and industrial companies.

5. As part of its business, Blue is a covered employer under the Longshore and Harbor Workers' Compensation Act and subscribes to Longshore and Harbor Workers' Compensation insurance to provide coverage for employees injured in work-related accidents.

6. Blue maintains Longshore and Harbor Workers' Compensation insurance through a policy purchased from America Equity Underwriters, Inc.

7. Blue assigns employees to work for ship repair businesses, pursuant to contract agreements with those businesses.

8. In 2021, the majority, if not all, of Blue's staffing contract agreements were with Harbor for the provision of temporary skilled labor.

9. When Blue assigns employees to its customer companies, those employees work under the direction, control, and supervision of the customer, its agents, and employees.

10. Each borrowed employee is required to follow the customer's policies and procedures in the work the employee performs for Harbor at its worksite, including all safety policies and procedures.

11. Blue entered into a contract with Harbor on November 27, 2017, in which Blue agreed to provide skilled labor, or temporary employees, to Harbor to work on Harbor's projects. In exchange, Harbor would pay Blue a sum based on the actual hours worked by Blue's temporary employees on Harbor's projects.

12. The amount Harbor paid per hour to Blue for employees assigned to Harbor was more than the amount Blue paid its employees, including Ms. Gary, with the difference in the two sums resulting in part from Blue's being responsible for paying employee benefits, including health insurance and workers' compensation insurance premiums.

13. Ms. Gary was hired by Blue as an at-will temporary employee on February 17, 2021 to fill a specific need at Harbor.

14. Upon being hired, Ms. Gary was assigned to work for Harbor as a fire watch, with her first day scheduled for February 22, 2021.

15. Ms. Gary was required to inform her supervisor at Harbor if she would not be present at work for any reason.

16. Ms. Gary was also encouraged to inform Blue if she would not be present at work for recordkeeping purposes.

I-2616693.1

17. Ms. Gary received her paychecks from Blue.

18. Blue maintained Ms. Gary's payroll information and employment records.

19. Blue had the official responsibility to terminate employees it assigned to work for its customers. However, Blue's customers always had the ability to terminate, relieve, or request a transfer of any temporary employee Blue assigned to work at Harbor.

20. When Ms. Gary worked at Harbor she completed a daily timesheet each day and was required to check in and out when she began and finished her work each day.

21. Harbor would review Ms. Gary's, and any other timecards of Blue temporary employees working at Harbor and send a copy of the timecards to Blue.

22. Pursuant to the Agreement with Blue, Harbor would then pay Blue for the hours worked by temporary employees, including Ms. Gary. In turn, Blue agreed that it would pay its temporary employees, including Ms. Gary, at an agreed upon rate.

23. When Ms. Gary reported to work each morning, she would check in at the Harbor trailer on site, complete a morning briefing led by Blue and/or Harbor employees, attend a safety toolbox talk, and receive her assignment for the day.

24. USS McFaul is owned by the United States Navy. USS McFaul was at General Dynamic's NASSCO-NORFOLK shipyard for repairs, pursuant to a contract between the United States and NASSCO-NORFOLK.

25. NASSCO-NORFOLK contracted with Coastal Mechanical Systems, LLC (hereinafter, "CMS").

26. CMS subcontracted some of its work aboard USS McFaul to Harbor.

27. Harbor then entered an Agreement with Blue for skilled labor to assist with the subcontract.

28. On February 22-26, 2021, March 1-3, 2021, March 8, 2021, and March 15, 2021, Ms. Gary was assigned by Harbor to work as a fire watch, pursuant to Harbor's Agreement with Blue, aboard USS McFaul.

29. While assigned to Harbor between February 22, 2021 and March 15, 2021, Ms. Gary was supervised by Blue employee, Maliry Gonzalez, and Harbor employee and Superintendent James Marshall.

30. Pursuant to the Agreement, Harbor assigned Ms. Gonzalez to a supervisory role.

31. Ms. Gonzalez did not report to any Blue employee in connection with the work either she or Ms. Gary did aboard USS McFaul.

I-2616693.1

32. On the day of the Accident, Ms. Gonzalez directed Ms. Gary to wait, in a designated spot, on the main deck of USS McFaul until she could locate the welder Ms. Gary would be working with that day.

33. At some point, without being directed or prompted to, Ms. Gary ascended to a different level of the McFaul where the blow-in doors were located. Ms. Gary, for an unknown reason, positioned her upper body inside the blow-in doors, after which the doors shut, crushing her.

34. Ms. Gary was treated as an employee of Blue.

35. Ms. Gary's Estate was paid the death benefits statutorily provided for under the Longshore Harbor Workers' Compensation Act.

FURTHER THE AFFIANT SAYETH NOT.

*Ymcordero*
Yeidy Cordero
President, Blue Staffing Agency, LLC.

**COMMONWEALTH OF VIRGINIA**
**CITY / COUNTY OF** Portsmouth **to wit:**

On this 29 day of June 2023, before me, a notary in and for the Commonwealth of Virginia, in the City or County aforesaid, personally appeared Yeidy Cordero who:

____ is personally known to me, or
✓ has produced Virginia Drivers License as identification, appeared before me, a notary in and for the Commonwealth aforesaid and being duly sworn, executed the foregoing Affidavit and acknowledged the Affidavit to be his/her free and voluntary act and deed.

IN WITNESS WHEREOF I have hereunto set my hand and official seal, this day and year first written above.

*Lynn Marie Frashefski*
Notary Public

Notary Registration Number: 8045172
My Commission Expires: Dec 31, 2027

LYNN MARIE FRASHEFSKI
Notary Public
Commonwealth of Virginia
Registration No. 8045172
My Commission Expires Dec 31, 2027

4

I-2616693.1