# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

DOUGLAS I. HORNSBY, ADMINISTRATOR OF THE
ESTATE OF CYNTHIA GARY,

    Plaintiff,

v.

UNITED STATES of AMERICA,

METRO MACHINE, CORP. d/b/a
GENERAL DYNAMICS NASSCO-NORFOLK,

HARBOR INDUSTRIAL SERVICES, INC.,

COASTAL MECHNICAL SYSTEMS, LLC,

ADVANCED INTEGRATED TECHNOLOGIES, LLC,

KD SHIPYARD REPAIRS, LLC

and

CECO ENVIRONMENTAL CORP.,

    Defendants.

Case No. 2:22-cv-427

## AFFIDAVIT OF ROLANDO FAJARDO

The undersigned, Rolando Fajardo, being duly sworn, and to the best of his knowledge, information, and belief, affirms, deposes, and states as follows:

1. I am over the age of 18 and I am competent in all respects to make this Affidavit. If called to testify, I would testify to the facts in this Affidavit from my personal knowledge.

2. The statements contained in this Affidavit are true and correct, based upon my personal knowledge acquired in my capacity as President, Harbor Industrial Services, Inc., and from research performed by me through business records, or by others at my request.

3. The Defendant, Harbor Industrial Services, Inc. (hereinafter, "Harbor"), has been sued and served in the matter of *Douglas I. Hornsby, Administrator of the Estate of Cynthia Gary v. United States of America, et al.*, Case No. 2:22-cv-427, pending in the United States

1

I-2616689.1

District Court for the Eastern District of Virginia, arising out of the fatality of Ms. Cynthia Gary (hereinafter, "Ms. Gary") while working aboard the USS McFaul (hereinafter, the "McFaul") on March 15, 2021.

4. Harbor is solely owned by me, Rolando Fajardo.

5. Harbor is, in relevant part, in the business of providing ship repair services to commercial and governmental vessels.

6. As part of its business, Harbor is a covered employer under the Longshore and Harbor Workers' Compensation Act and subscribes to Longshore and Harbor Workers' Compensation insurance to provide coverage for employees injured in work-related accidents.

7. Harbor maintains Longshore and Harbor Workers' Compensation insurance through a policy purchased from American Equity Underwriters, Inc.

8. Harbor borrows employees from temporary staffing companies in connection with its ship repair business at its facility in Portsmouth, Virginia, pursuant to contracts with those temporary staffing agencies.

9. When Harbor borrows employees from temporary staffing companies, these employees work under the direction, control, and supervision of Harbor, its agents, and employees.

10. Each borrowed employee is required to follow Harbor's policies and procedures in the work the employee performs for Harbor at its worksite, including all safety policies and procedures.

11. Harbor entered into a contract with Blue on November 27, 2017, in which Blue agreed to provide skilled labor, or temporary employees, to Harbor to work on Harbor's projects. In exchange, Harbor would pay Blue a sum based on the actual hours worked by Blue's temporary employees on Harbor's projects.

12. Harbor determined the daily and weekly schedules that Blue's employees assigned to it would be required to work.

13. Ms. Gary was hired by Blue on February 17, 2021 and assigned to work for Harbor as a fire watch, with her first day scheduled for February 22, 2021.

14. Harbor could at any time terminate, relieve, or request a transfer of any temporary employee assigned by Blue to work at Harbor.

15. When Ms. Gary worked at Harbor, she completed a daily timesheet each day and was required to check in and out when she began and finished her work each day.

16. Harbor would review Ms. Gary's, and any other timecards of Blue temporary employees working at Harbor and send a copy of the timecards to Blue.

17. Pursuant to the Agreement with Blue, Harbor would then pay Blue for the hours worked by temporary employees, including Ms. Gary. In turn, Blue agreed that it would pay its temporary employees, including Ms. Gary, at an agreed upon rate.

18. Each day Ms. Gary reported to work, she would check in at the Harbor trailer on site at NASSCO-NORFOLK, complete a Harbor timesheet, attend a morning briefing led by Harbor employees, attend a safety toolbox talk led by Harbor employees, receive her assignment for the day from her Harbor supervisor, and then walk with other Blue and Harbor employees to USS McFaul to begin her assigned work.

19. USS McFaul is owned by the United States Navy. USS McFaul was at General Dynamic's NASSCO-NORFOLK shipyard for repairs, pursuant to a contract between the United States and NASSCO-NORFOLK.

20. NASSCO-NORFOLK contracted with Coastal Mechanical Systems, LLC (hereinafter, "CMS").

21. CMS subcontracted some of its work aboard USS McFaul to Harbor.

22. Harbor then entered an Agreement with Blue for skilled labor to assist with the subcontract with CMS.

23. Pursuant to the Agreement, Harbor was willing to provide, and provided, tools necessary for Ms. Gary to perform her daily job activities.

24. Pursuant to the Agreement, Ms. Gary was required to inform her supervisor at Harbor if she would not be present at work for any reason.

25. On February 22-26, 2021, March 1-3, 2021, March 8, 2021, and March 15, 2021, Ms. Gary was assigned by Harbor to work as a fire watch, pursuant to Harbor's Agreement with Blue, aboard USS McFaul.

26. While assigned to Harbor between February 22, 2021 and March 15, 2021, Ms. Gary was supervised by Blue employee, Maliry Gonzalez, and Harbor employee and Superintendent James Marshall.

27. Pursuant to the Agreement, Harbor assigned Ms. Gonzalez to a supervisory role.

28. Ms. Gonzalez reported directly to Mr. Marshall.

29. As a first-level supervisor, Ms. Gonzalez ensured that Harbor safety protocols were being followed aboard the USS McFaul.

I-2616689.1

30. Mr. Marshall assigned Ms. Gary, and other Blue employees, their daily job duties.

31. Mr. Marshall and Ms. Gonzalez regularly met with and monitored Ms. Gary's, and other Blue employees', work.

32. Mr. Marshall oversaw Ms. Gary's, and other Blue employees', work during the project.

33. On March 15, 2021, after Ms. Gary checked in at the Harbor trailer on site at NASSCO-NORFOLK, completed a Harbor timesheet, attended the morning briefing led by Harbor, attended the safety toolbox talk led by Harbor, walked over to USS McFaul with other Blue and Harbor employees, and was instructed by Ms. Gonzalez to wait in a designated location until Ms. Gonzalez could locate the welder Ms. Gary would be working with that day at which time Ms. Gary would be told where she would work as a fire watch.

34. Ms. Gary was treated as an employee of Harbor.

FURTHER THE AFFIANT SAYETH NOT.

_____
Rolando Fajardo
President, Harbor Industrial Services, LLC

**COMMONWEALTH OF VIRGINIA**
**CITY / COUNTY OF** Portsmouth **to wit:**

On this 29 day of June 2023, before me, a notary in and for the Commonwealth of Virginia, in the City or County aforesaid, personally appeared Rolando Fajardo who:

____ is personally known to me, or
✓ has produced Virginia Drivers License as identification, appeared before me, a notary in and for the Commonwealth aforesaid and being duly sworn, executed the foregoing Affidavit and acknowledged the Affidavit to be his/her free and voluntary act and deed.

IN WITNESS WHEREOF I have hereunto set my hand and official seal, this day and year first written above.

Lynn Marie Frashefski
Notary Public
Notary Registration Number: 8045172
My Commission Expires: Dec 31, 2027

LYNN MARIE FRASHEFSKI
Notary Public
Commonwealth of Virginia
Registration No. 8045172
My Commission Expires Dec 31, 2027

4

I-2616689.1