IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DOUGLAS I. HORNSBY,
ADMINISTRATOR OF THE ESTATE OF
CYNTHIA GARY,

Plaintiff,

v. Case No. 2:22-cv-00427-RBS-LRL

UNITED STATES OF AMERICA, *et al.*,

Defendants.

**DEFENDANT CECO ENVIRONMENTAL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant CECO Environmental Corporation ("CECO"), by counsel and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and Rule 7(K) of the Rules of the United States District Court for the Eastern District of Virginia, submits the following Memorandum of Law in Support of Its Motion for Judgment on the Pleadings.

**INTRODUCTION**

Plaintiff has invoked this Court's admiralty jurisdiction to bring "a suit for wrongful death and other injuries," (see Amended Complaint, ECF No. 21 "Am. Compl." ¶ 1), against CECO, the manufacturer of a blow-in door component to a massive gas turbine powering the USS *McFAUL*, to recover damages incurred as a result of his decedent's death. In a September 7, 2023 hearing, Plaintiff's counsel admitted that Plaintiff did not know what caused this accident, did not know whether the blow-in door was defective or whether some other entity failed to follow proper tag-out safety procedures, and did not know who – if anyone – may be responsible for this accident. (Hr'g Tr. 14:11, 18-20, 19:25-20:3). Plaintiff's Amended Complaint does not state claims against CECO upon which relief may be granted under the general maritime law

because its barebones, conclusory allegations as to an unidentified (and perhaps unidentifiable) alleged product defect fail to provide CECO notice of what Plaintiff's theory of recovery may be. Further, Plaintiff's Amended Complaint sets forth alternative theories of liability arising out of one factual predicate that is necessarily internally inconsistent. CECO respectfully requests the Court enter judgment on the pleadings.

**PROCEDURAL BACKGROUND**

Douglas Hornsby was appointed as the administrator of the estate of Cynthia Gary by the Circuit Court for the City of Newport News, Virginia. On October 14, 2022, Hornsby commenced a wrongful death action against the United States, as owner of the USS *McFAUL*, aboard which Gary sustained fatal injuries while serving as a fire watch while the *McFAUL* was undergoing extensive repairs. See ECF No. 1. Sometime thereafter, Plaintiff conducted a joint inspection of the *McFAUL* with representatives of the United States and engaged in modest initial document exchange with the United States. From there, Plaintiff identified six other entities that may have been involved and filed an Amended Complaint on March 10, 2023.

Defendants KD Shipyard Repairs, LLC ("KD"), Coastal Mechanical Systems, LLC, ("Coastal") and CECO filed motions to dismiss. See ECF Nos. 54, 59, and 73.[1] CECO asked that Count VIII of the Amended Complaint seeking relief under the Virginia Wrongful Death Act because the general maritime law—not state law—supplied the governing law to be applied by this Court sitting in admiralty. ECF No. 74. Coastal sought dismissal of all claims against it because the Amended Complaint did not contain sufficient factual allegations against it to state a

[1] Defendant Harbor Industrial Services, Inc. ("Harbor") filed a motion for summary judgment, see ECF No. 82, arguing that it counts as an "employer" under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, *et seq.*, and therefore the exclusive remedy available to the plaintiff was benefits under the LHWCA. See ECF No. 83. Plaintiff did not oppose this motion, and Plaintiff's claims against Harbor. were dismissed. ECF No. 88.

claim upon which relief may be granted. ECF No. 60. KD sought dismissal on both points. ECF No. 55. After briefing closed, these motions were referred to Judge Leonard. ECF No. 90.

After a September 7, 2023 hearing, Judge Leonard issued his Recommendation and Report ("R&R") on September 29, 2023, which recommended that each of the motions be granted, that leave to amend be denied, and that the claims be dismissed with prejudice based in part on Plaintiff's counsel's admission during the hearing that Plaintiff has no evidence or even theories as to the cause of Ms. Gary's death. ECF No. 93. Plaintiff submitted a timely partial objection to the R&R, arguing that (1) Plaintiff should be given leave to amend with respect to Coastal and (2) the dismissal of the claims against KD should be without prejudice. See ECF No. 96. Plaintiff has interposed no objection to any ruling concerning CECO. *Id.*

## ALLEGATIONS OF FACT

### I. Overview

Cynthia Gary, Plaintiff's decedent, passed away on March 15, 2021, (Am. Compl. ¶ 2), when a blow-in door closed on her for an unknown reason while she was working on the USS *McFAUL*. (*Id.* ¶ 10). Plaintiff's counsel admitted that both OSHA and the United States performed separate investigations of this accident and came to no conclusions as to the cause. (Hr'g Tr. 16:24-17:3; 17:11-13). This accident is unexplainable.

### II. Plaintiff's Allegations

At the time of Mrs. Gary's death, the *McFAUL* was owned by the United States and was docked at Defendant, Metro Machine Corp, d/b/a General Dynamics NASSCO ("NASSCO"), Norfolk, Virginia's shipyard for repairs and upkeep. (*Id.* ¶ 4, 5). NASSCO was the primary contractor responsible for the work being done on the McFaul (*Id.* ¶ 5) while Defendants Harbor, Coastal, Advanced Integrated Technologies, LLC ("AIT"), and KD were subcontractors also

performing work on the *McFAUL*. (*Id.* ¶¶ 6-9). Mrs. Gary was working for Harbor aboard the *McFAUL* pursuant to an assignment from Blue Staffing Agency. (*Id.* ¶¶ 18-19). Harbor paid benefits to Gary's beneficiaries pursuant to the federal Longshore and Harbor Workers Compensation Act and has since been dismissed as a party. (*Id.* ¶ 16); ECF No. 88.

Plaintiff alleges that Gary was positioned as fire watch on the exterior side of a blow-in door that was tagged-out (disabled) and in the open position. (Am. Compl. ¶ 21). Plaintiff further alleges that while Gary was working aboard the *McFAUL*, AIT requested a tag-out of the blow-in door, which was in effect on March 15, 2021, (*Id.* ¶ 22), and KDSR was working on the switchboard that controlled the blow-in door. (*Id.* ¶ 23). As to the blow-in door, Plaintiff alleges that it "was not properly tagged out, was not disconnected from potential sources of energy that could cause it to close suddenly, and was not otherwise secured to prevent it from closing." (*Id.* ¶ 25). Plaintiff also alleges that the control switch for the blow-in door was defective. (*Id.* ¶ 26). Plaintiff alleges no other facts or details outlining the circumstances regarding the work on the *McFAUL* at the time of Gary's death or what roles each defendant played. *See* ECF No. 93 at 2, n.1 ("The Amended Complaint lacks key details . . . ."), (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) ("Plaintiff's speculation regarding how Ms. Gary died are mere 'naked assertion[s]' that fail to 'nudge [his] claims across the line from conceivable to plausible."), ECF No. 93 at 9 (internal citations omitted) ("Plaintiff merely lists out the elements of negligence, and in conclusory fashion, notes that Coastal meets each . . . . Yet, facts supporting those elements cannot be found in the Amended Complaint.").

## LEGAL STANDARD

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

Motions pursuant to Rule 12(c) of the Federal Rules of Civil Procedure are reviewed using the same standard applied to motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Massey v. Ojaniit*, 759 F.3d 343, 352 (4th Cir. 2014); accord *Atlantic Specialty Ins. Co. v. Bineda*, 632 F. Supp. 3d 681, 693 (W.D. Va. 2022).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Bare legal conclusions are not entitled to the assumption of truth and are insufficient to state a claim." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (internal quotation marks omitted). To pass Rule 8 muster, the pleading must meet two basic requirements: it must contain sufficient factual allegations and those allegations must be plausible. *Id.*; see also *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, sufficient factual allegations include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The second requirement on a plaintiff is that he must "plead factual content that allows the court to draw the reasonable inference that *the defendant* is liable for *the misconduct* alleged." *Iqbal*, 556 U.S. at 678. Otherwise, a pleading will "stop[] short of the line between possibility and plausibility of entitle[ment] to relief." *Id.*

"While the plaintiff is not required to forecast evidence sufficient to prove the elements of the claim, he must allege sufficient facts to establish those elements and advance [his] claim across the line from conceivable to plausible." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 146 (4th Cir. 2014) (internal quotation marks omitted). Plausibility further requires that the complaint recite "enough fact to raise a reasonable

expectation that discovery will reveal evidence" of the plaintiff's claim. *Twombly*, 550 U.S. at 556; *see also US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556) (reviewing a motion to dismiss for failure to state a Racketeer Influenced and Corrupt Organizations claim and reciting that a "complaint must offer 'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity"); *Cargill, Inc. v. Degesch America, Inc.*, 875 F. Supp. 2d. 667, 673 (E.D. La. 2012) (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 255-57 (5th Cir. 2009)) (noting that "the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim").

While typically Rule 12(b)(6) motions are limited to the operative complaint, Rule 12(d) provides that "a court may rely on extrinsic materials to determine a motion to dismiss without converting the proceeding into a motion for summary judgment. . . . For example, a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (*quoting Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). "This conversion [from a 12(b)(6) to a motion for summary judgment] is not appropriate when the parties have not had an opportunity to conduct reasonable discovery." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 258 (E.D. Pa. 2020); *Fadaie v. Alaska Airlines, Inc.*, 293 F. Supp. 2d 1210, 1214 (W.D. Wash. 2003) (taking judicial notice of administrative complaint filed with OSHA). "Administrative complaints and agency decisions are the type of public records that are properly the subject of judicial notice." *Fadaie*, 293 F. Supp. 2d at 1215; *see also Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 784 (D. Md. 2012)

(judicial notice taken of citation issued by Maryland state analog to OSHA containing factual findings, opinions, and conclusions of government agency and was admissible in product liability claim); *Masello v. Stanley Works, Inc.*, 825 F. Supp. 2d 308, 315–16 (D.N.H. 2011) (taking judicial notice of OSHA report).

**ARGUMENT**

Plaintiff asserts three theories of product liability against CECO: two claims for negligence (Count V and Count VI) and one claim for breach of implied warranty (Count VII). Plaintiff's wrongful death claim under Virginia law has been held to be preempted by the general maritime law.

**1. Plaintiff's Amended Complaint Fails to Plausibly Allege Sufficient Facts to Support Any Claim for Relief.**

Pursuant to general maritime law, Plaintiff's Amended Complaint does not state a claim upon which relief may be granted, and his Amended Complaint must be dismissed as to CECO.

**i. The General Maritime Law**

"With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986). Product liability cases under the general maritime law are governed by the Restatement. *See Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 879 (1997).[2] Courts in the Fourth Circuit follows Section 402A of the Second Restatement. *See Chesher v. 3M Co.*, 234 F. Supp. 3d 693 (D.S.C. 2017); *Jurgensen v. Albin Marine, Inc.*, 216 F. Supp. 2d 524 (D. Md. 2002). To prevail on a product

---

[2] The Restatement (Third) of Torts has been referenced by the Supreme Court with respect to general maritime product liability cases. *See Saratoga Fishing Co.*, 520 U.S. at 879; see also *Air & Liquid Sys. Corp. v. DeVries*, 139 S.Ct. 986, 993 (2019). However, neither the Supreme Court nor the Fourth Circuit has expressly adopted it to replace the Second Restatement.

liability claim under Section 402A, a plaintiff must show that (1) the defendant sold the products; (2) the products were unreasonably dangerous or defective when they left defendant's control; (3) the defects caused the complained-of injury; and (4) the plaintiff sustained damages in connection therewith. *Ortega Garcia v. United States*, 986 F.3d 513, 533 (5th Cir. 2021) (under general maritime law);[3] *Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 483 (4th Cir. 2018) (diversity action decided under South Carolina law, which like the general maritime law incorporates Section 402A) (quoting S.C. Code § 15-73-30). Plaintiff had to plead facts, not conclusions, supporting allegations against CECO of the above four elements. Plaintiff did not.

**a. Plaintiff Does Not Plausibly State a Claim as to CECO**

Plaintiff's Amended Complaint recites inconsistent facts and theories that, due to the range of possibilities they cover, are vague and do not establish a plausible claim against CECO. Plaintiff claims that the blow-in door was unreasonably dangerous and defective, but his allegations as to CECO are belied by his allegations as to the other defendants.

**i. Plaintiff Did Not Plausibly Allege a Product.**

As a threshold matter, the Amended Complaint purports to ascribe fault to CECO for allegedly designing or manufacturing a custom component part for an active warship. Plaintiff invoked the Court's admiralty jurisdiction to suggest that this warship's component parts are unreasonably dangerous. The law of product defect does not sweep so far. *See McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173–74 (9th Cir. 2016). In *McIndoe*, a panel of the Ninth Circuit affirmed the dismissal of a product defect claim against the builder of a custom-ordered naval ship. *Id.* at 1174. It reasoned that under the Restatement's definition of the term

---

3 In *Ortega Garcia v. United States*, the Fifth Circuit directly rejected a request to adopt the "persons" scope from the Third Restatement as an enlargement of the Second Restatement's "ultimate user or consumer" application.

*product* meaning "tangible personal property *distributed commercially* for use or consumption," a warship cannot be defined as a "product." *Id.* at 1173 (emphasis in original) (quoting RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 19(a)). The panel harmonized the Restatement's definition of "product" with the general maritime law's "primary goal . . . to protect and promote the 'smooth flow of maritime commerce.'" *Id.* at 1174 (quoting *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674–76 (1982)).

Plaintiff's theory rests on the assumption that this gas turbine component affixed to one of the most sophisticated weapons systems in the American arsenal is somehow commercially available and that the court can adjudicate whether this military equipment is reasonable. "It should be axiomatic that 'considerations of cost, time of production, risks to participants, risks to third parties, and any other factors that might weigh on the decisions of whether, when, and how to use a particular weapon, are uniquely questions for the military and are exempt from review by civilian courts.'" *Tozer v. LTV Corp.*, 792 F.2d 403, 406 (4th Cir. 1986) (quoting *In re Agent Orange Prod. Liab. Litig.*, 534 F. Supp. 1046, 1054 n.1 (E.D.N.Y. 1982)). "What would pose an unreasonable risk to the safety of civilians might be acceptable—or indeed necessary—in light of the military mission" of the vessel. *Id.*

**ii. Plaintiff's Allegations of Defect Are Conclusory.**

Plaintiff alleges that "[t]he blow-in door was not properly tagged out, was not disconnected from potential sources of energy that could cause it to close suddenly, and was not otherwise secured to prevent it from closing." (Am. Compl. ¶ 25). Plaintiff thereafter alleges that NASSCO, Harbor, Coastal, AIT, and KD

> negligently fai[ed] to warn Gary of the dangers of the blow-in door, fail[ed] to properly tag-out and secure the blow-in door, fail[ed] to ensure that the blow-in door had been properly tagged-out and secured by the crew of the McFaul, fail[ed] to ensure that Gary would not be asked to or required to access the

> interior of the ship through the blow-in door, fail[ed] to ensure the switchboard controlling the blow-in door was working properly and would not be activated inadvertently, and . . . otherwise fail[ed] to use reasonable care to warn Gary or prevent the blow-in door from closing unexpectedly and injuring Gary.

(*Id.* ¶ 48). Plaintiff then states that "[i]n *addition*, the control switch for the blow-in door, located in the McFaul's engine room, was defective" such that "required safety features on the switch did not function." (*Id.* ¶ 26) (emphasis added); *see Ball v. Takeda Phama. Am., Inc.*, 963 F. Supp. 2d 497, 505–06 (E.D. Va. 2013) ("A bare allegation of a 'defect' is no more than a legal conclusion.") (collecting cases).

Plaintiff purports to assert state-law product liability negligence and implied warranty claims against CECO. In support of these claims, Plaintiff alleges that the blow-in door was unreasonably dangerous and that CECO breached its duties to the Plaintiff by providing such an unreasonably dangerous product and/or failing to warn of the hazards associated with it. *Id.* ¶¶ 50-69. The only description of the specific defect or hazard with the blow-in door is reproduced below:

> The blow-in door was unreasonably dangerous in that there was no mechanism that allowed the blow-in door to be completely removed from power sources so that it could not close; there was no mechanism by which the blow-in door could be locked in the open position during repairs; there was no mechanism that would prevent the blow-in door from closing when it was obstructed by an object, such as a human body; there was no mechanism to prevent a person from passing through the blow-in door when open; and there was otherwise no mechanism that would prevent the blow-in door from suddenly and unexpectedly closing.

*Id.* at ¶ 55.

These are the very same safety features that the Plaintiff complains were not engaged by the co-defendants. Despite Plaintiff's allegations as to the failure to engage safety devices on the blow-in door, Plaintiff also somehow alleges that such safety devices did not even exist. Rule 8 of the Federal Rules of Civil Procedure permits a plaintiff to plead *alternative* facts against

different parties. However, here, and in an effort to cover all possible theories against all possible defendants, Plaintiff has alleged all possible facts as to the existence of safety features and how such safety features were or were not used. The Amended Complaint does not include facts that would suggest these safety features were inadequate or inoperable, but simply that they existed, but were not engaged. In other words, CECO made a fine product, but Plaintiff takes issue with how others used it.

These facts render his allegations at times contradictory, inconsistent, and impossible. Because Plaintiff is attempting to pursue everyone and every theory under the sun for this accident, his Amended Complaint fails to clearly state the alleged defect that caused this accident, why this accident happened, or how CECO may be responsible for such accident. *See Lankford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2022) (taking dim view of grouped pleading style). CECO is left to speculate as to what the Plaintiff's actual claims may be. This is unsurprising, given that Plaintiff's counsel has admitted that he does not know what caused Gary's death and admitted that the various investigations give no further information. Nonetheless, it is the Plaintiff's burden to plead a plausible claim for relief, and Plaintiff has failed to do so.

**b. Any Failure to Tag Out and Secure The Blow-In Door Was a Superseding Cause of This Accident.**

Additionally, if we were to assume that Plaintiff's allegations as to the failure to tag-out the blow-in door or to otherwise ensure that the blow-in door was depowered and could not operate are correct, the co-defendants' actions are a superseding cause cutting off CECO's alleged liability. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837-41 (1996) (adopting the doctrine of superseding cause as to claims in admiralty and holding that when "ruling upon whether a defendant's blameworthy act was sufficiently related to the resulting harm to warrant

imposing liability for that harm on the defendant, courts sitting in admiralty may draw guidance from, *inter alia*, the extensive body of state law applying proximate causation requirements and from treatises and other scholarly sources"); *see also Cooper v. Ingersoll Rand Co.*, 628 F. Supp. 1488, 1494 (W.D. Va. 1986) (applying Virginia products liability law to a claim for improper design and manufacture of a mining machine and finding that the proximate cause of the decedent's death "was the failure to de-energize the mining machinery before undertaking repairs" and that "[t]he alleged improper design and any negligence possibly involved in manufacture and rebuilding [was] merely a circumstance of the accident" such that the failure to lock out and tag out the machinery as required by safety regulations was an entirely independent and superseding cause); *see also Thweatt v. Rhodes*, No. 21-1242, 2023 WL 4231724, at *4 (4th Cir. June 28, 2023) (trial court's grant of judgment on the pleadings of malicious prosecution claim against police officer pursuant to 42 U.S.C. § 1983 affirmed where magistrate judge's arrest warrant broke the causal chain).

In *APV Crepaco, Inc. v. Alltransport, Inc.*, a manufacturer hired a freight forwarder to manage the carriage of two cargo containers from its plant in Wisconsin to Egypt. 683 F. Supp. 1031, 1031 (E.D. Va. 1987). The freight forwarder was advised that the cargo would need to be inspected in Norfolk in accordance with the letter of credit issued by the purchaser's bank. *Id.* at 1031–32. The cargo was not inspected in Norfolk and was therefore not discharged from the vessel in Egypt. *Id.* at 1032. The cargo remained aboard the vessel to be returned and inspected in the United States. *Id.* On the return voyage, the vessel was involved in a collision, and the cargo was lost. *Id.* The manufacturer sued the freight forwarder for negligence on the specious theory that the failure to have the cargo inspected in Norfolk resulted in additional unnecessary transatlantic carriage and increased the risk of loss due to a peril of the sea (i.e., loss). *Id.* at

1032–33. The Court granted the freight forwarder's motion for judgment on the pleadings, holding that as a matter of law the "collision between two vessels was not a natural and probable consequence of defendant's failure to inspect the containers in Norfolk." *Id.* at 1034. It further reasoned that "[a]t best, the possibility of a collision resulting from the lack of an inspection is mere conjecture or speculation, which does not rise to the level of a question of fact for the trier of fact." *Id.* (citing *Beale v. Jones*, 210 Va. 519, 171 S.E.2d 851 (1970)).

Here, just like in *APV Crepaco*, the Amended Complaint is clear that CECO's involvement and allegedly wrongful conduct is not the precipitating event of the harm. The blow-in door that the Navy designed for its warships like the USS *McFAUL* was replete with safety mechanisms and warnings such that numerous contractors and government officials knew to proceed with locking out and tagging out the blow-in door prior to beginning their work. These allegations are not pleaded in the alternative to the theories against the handful of contractors, but instead are pleaded "in addition" to them. See Am. Compl. ¶ 26. Plaintiff seeks to hang liability around the necks of each company involved in this repair project for subjecting his decedent to an unsafe worksite. The unsafe worksite, Plaintiff alleges, is not the clearly and obviously dangerous component to a warship's turbines, but instead is the failure to de-energize this clearly and obviously dangerous component properly. *APV Crepaco*, 683 F. Supp. at 1034.

**ii. Discovery Will Not Reveal Evidence of CECO's Liability**

Plaintiff's Amended Complaint fails to allege sufficient facts to raise Plaintiff's allegations from merely possible to plausible. None of Plaintiff's claims "contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim." *Cargill*, 875 F. Supp. 2d at 673 (citing *Lormand*, 565 F.3d at 225-57); *see*

*also Twombly*, 550 U.S. at 556. Rather, Plaintiff has already admitted that further discovery will *not* reveal evidence connected CECO's liability. As clearly outlined by Judge Leonard:

> Indeed, at the September hearing, Plaintiff's counsel agreed that "the [C]omplaint is woefully short of facts" and that "nobody knows what happened." ECF No. 92 at 13:15-22, 14:4-6. Plaintiff also acknowledges that the United States Navy and the Occupational Safety and Health Administration have conducted investigations and have been unable to explain why the blow-in door suddenly shut on Ms. Gary. *Id.* at 16:9-25."

ECF No. 93 at 8. Plaintiff cannot "engage in a broad fishing expedition to assert a claim . . . ." (Hr'g Tr. 26:1).[4]

The Amended Complaint is wholly devoid of facts to establish the essential elements of a maritime products liability claim, and the record is clear that discovery will not reveal evidence suggesting CECO's liability. Plaintiff's counsel has already admitted that Plaintiff can only speculate as to what caused the blow-in door to close. See *Torch Liquidating Tr. ex rel. Bridge Assocs. LLC v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009) ("The role of discovery . . . is to find support for properly pleaded claims, not to find the claims themselves."); *Zuk v. E. Pa. Psych. Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996) ("[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it."); *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (Discovery is to "assist a party prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim.") (emphasis in original). Such speculation does not raise Plaintiff's conclusory allegations from possible to plausible nor does it raise a reasonable expectation that discovery will lead to evidence of CECO's liability. Plaintiff's

---

4 Although Plaintiff appended a document in support of his Objections purporting to be a Violation Worksheet from the Occupational Safety and Health Administration. See ECF No. 96-1. This document, which Plaintiff filed in support of his contention that there may be known facts that may support theories of liability against the contractors involved in the repair of the *McFAUL*, makes no reference of the condition, functionality, or design of the blow-in door to augment his barebones product defect claims against CECO.

Amended Complaint failed both prongs of *Iqbal* and *Twombly*, and Plaintiff's claims against CECO must therefore be dismissed.

Plaintiff's decedent was aboard one of the most sophisticated and successful weapons systems in the United States Navy's arsenal when she met her unfortunate demise. The USS *McFAUL*, like the rest of the Navy's fleet, is intended to defend the sovereign interests of the United States of America through military power. With apologies to the great General Douglas MacArthur, the USS *McFAUL* is an example of the United States's war potential, achieved through progressive advances in scientific discovery to the point that mankind must revise the traditional concept of war. With the twin aims of (1) *Don't Give Up the Ship!* and (2) protecting the sovereignty of this great nation, the USS *McFAUL* and its constituent parts are simply not meant for personal or commercial use.

## CONCLUSION

For the foregoing reasons, Defendant CECO Environmental Corporation respectfully requests that the Court grant its Motion for Judgement on the Pleadings.

**CECO ENVIRONMENTAL CORP.**

By Counsel

/s/W. Benjamin Woody
W. Benjamin Woody (VSB No. 91306)
Harman, Claytor, Corrigan & Wellman
1900 Duke Street, Suite 210
Alexandria, Virginia 22314
804-747-5200 - Phone
804-747-6085 - Fax
bwoody@hccw.com

Stanley P. Wellman (VSB No. 27618)
Dannel C. Duddy (VSB No. 72906)
Counsel for CECO Environmental Corporation

Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 – Fax
swellman@hccw.com
dduddy@hccw.com

**C E R T I F I C A T E**

I hereby certify that on the 30th day of October, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert J. Haddad, Esq.
Andrew M. Hendrick, Esq.
Ruloff, Swain, Haddad, Morecock, Talbert & Woodward, P.C.
317 30th Street
Virginia Beach, VA 23451
rhaddad@srgslaw.com
ahendrick@srgslaw.com
*Counsel for Plaintiff*

Malinda R. Lawrence, Esq.
Darren E. Myers, Esq.
United States Department of Justice, Civil Division, Torts Branch, Aviation, Space & Admiralty Litigation
175 N Street N.E., 8th Floor
Washiington, DC 20002
Malinda.R.Lawrence@usdoj.gov
Darren.E.Myers@usdoj.gov

Jason R. Harris, Esq.
Cranfill Sumner, LLP
P. O. Box 1950
Wilmington, NC 28402
jharris@cshlaw.com
*Counsel for Defendant Coastal Mechanical Systems, LLC*

Garry D. Hartlieb, Esq.
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
garry.hartlieb@usdoj.gov
*Counsel for Defendant United States of America*

Lynn K. Brugh, IV, Esq.
John Arch Irvin, Esq.
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
lbrugh@williamsmullen.com
jirvin@williamsmullen.com
*Counsel for Defendant Metro Machine Corp. dba General Dynamics NASSCO-Norfolk*

Dustin Mitchell Paul, Esq.
Woods Rogers Vandeventer Black, PLC
101 West Main Street, Suite 500
Norfolk, VA 23510
Dustin.Paul@wrvblaw.com
*Counsel for Defendant Advanced Integrated Technologies, LLC*

James L. Chapman, IV, Esq.
Alexander Ryan McDaniel, Esq.
Crenshaw, Ware & Martin, PLC
150 West Main Street, Suite 1923
Norfolk, VA 23510-2111
757-623-3000 - Phone
757-623-5735 - Fax
jchapman@cwm-law.com
amcdaniel@cwm-law.com
*Counsel for Defendant KD Shipyard Repairs, LLC*

Christopher Alan Abel, Esq.
Willcox & Savage, P.C.
Wells Fargo Center
440 Monticello Avenue, Suite 2200
Norfolk, VA 23510
cabel@wilsav.com
*Counsel for Defendant Harbor Industrial Services, Inc.*

/s/W. Benjamin Woody
W. Benjamin Woody (VSB No. 91306)
Harman, Claytor, Corrigan & Wellman
1900 Duke Street, Suite 210
Alexandria, Virginia 22314
804-747-5200 - Phone
804-747-6085 - Fax
bwoody@hccw.com

Stanley P. Wellman (VSB No. 27618)
Dannel C. Duddy (VSB No. 72906)
Counsel for CECO Environmental Corporation
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
swellman@hccw.com
dduddy@hccw.com