**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| DOUGLAS I. HORNSBY, Administrator of the Estate of CYNTHIA GARY, | ) ) ) |
| Plaintiff, | ) ) Case 2:22-cv-00427 |
| v. | ) ) In Admiralty |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) ) |

**UNITED STATES' THIRD-PARTY COMPLAINT AND RULE 14(C) TENDER**

NOW COMES the Defendant and Third-Party Plaintiff, the United States of America, and respectfully files the following Third-Party Complaint and Rule 14(c) Tender against Third-Party Defendants Metro Machine Corp., d/b/a General Dynamics NASSCO-Norfolk, and Advanced Integrated Technologies, LLC, and alleges on information and belief as follows:

**JURISDICTION AND PARTIES**.

1.  This is a case of admiralty and maritime jurisdiction within Rule 9(h) of the Federal Rules of Civil Procedure.

2.  The United States of America is a sovereign nation authorized to bring this Third-Party Complaint pursuant to 28 U.S.C. § 1345 and Rule 14(c) of the Federal Rules of Civil Procedure.

3.  Made Third-Party Defendants herein are Metro Machine Corp., d/b/a General Dynamics NASSCO-Norfolk (NASSCO), and Advanced Integrated Technologies, LLC (AIT).

4.  NASSCO is a corporation engaged in the business of ship repair, incorporated under the laws of Virginia, having its principal office in Norfolk, Virginia.

1

5. AIT is a Virginia limited liability company, also engaged in the business of ship repair, having its principal office in Norfolk, Virginia.

6. Plaintiff Douglas I. Hornsby is the Administrator of the Estate of Cynthia Gary. Cynthia Gary (decedent), a deceased ship repair worker, was killed on March 15, 2021 while performing ship repair work on board the USS McFAUL (DDG 74) in the NASSCO shipyard in Norfolk, Virginia.

7. Plaintiff initiated this lawsuit against the United States, alleging injuries and death and claiming damages as a result of the alleged negligence of Defendant United States of America as vessel owner, under the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. § 905(b), the Public Vessels Act, 46 U.S.C. § 31101, *et seq.*, and this Court's general admiralty jurisdiction, 28 U.S.C. § 1333.[1]

8. The United States filed an Answer to Plaintiff's First Amended Complaint (ECF No. 62), in which it denied any liability. The issues raised thereby remain before this Court without trial or adjudication.

9. Jurisdiction over this Third-Party Complaint and Rule 14(c) Tender exists under this Court's jurisdiction: over suits filed by the United States, 28 U.S.C. § 1345; the Longshore and Harbor Workers Compensation Act, 33 U.S.C. §§ 905(b) and 933(a); this Court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure; or alternatively under this Court's Supplemental Jurisdiction, 28 U.S.C. § 1367. The United States further invokes the maritime procedures specified in Rule 14(c) of the

---

[1] Plaintiff's Amended Complaint included a count alleging liability under the Virginia wrongful death statute, Va. Code § 8.01-50 *et seq.* which was dismissed by the Court on December 15, 2023 (ECF No. 111 at 13).

Federal Rules of Civil Procedure, and hereby tenders NASSCO and AIT as direct defendants against any and all claims, allegations, and rights of action or recovery asserted by Plaintiff.

## GENERAL ALLEGATIONS

10. Plaintiff filed suit seeking recovery against the United States as the owner of the USS McFAUL, a U.S. Navy Destroyer. At the time of decedent's death, the McFAUL was undergoing a months-long, comprehensive maintenance, repair, and restorative ship repair project referred to as a "maintenance availability."

11. NASSCO was the prime ship repair contractor hired by the United States to conduct and complete all of the work required to be performed on the McFAUL.

12. On or about January 27, 2021, AIT, a ship repair company employed under contract to NASSCO, directed that a piece of equipment situated in the vessel's starboard side No. 2 Ship's Service Gas Turbine Generator (No. 2 SSGTG) air intake shaft be "tagged out" in a specific manner, to accommodate certain repair work that AIT was about to commence.

13. The term "tag-out" is defined as "a process of hanging danger or caution tags to isolate a system or equipment to protect personnel or equipment." *Tag-Out Users Manual,* S0400-AD-URM-010/TUM (U.S. Navy, Oct. 2020 ed.) (TUM).

14. The equipment on which AIT was to begin work was referred to as a "moisture separator" within the air intake shaft. AIT specifically directed that a panel (sometimes referred to as a "blow-in" panel) in the moisture separator be "tagged out in the open position." The panel was to be tagged out in the open position because AIT was about to replace a rubbery, adhesive lining (referred to as a "gasket") that adhered to the surface of the blow-in panel, around its perimeter. The purpose of the gasket was to seal the perimeter of the blow-in panel when it was

3

in its normal, closed position. A tight, leak-proof seal by the gasket was essential to proper operation of the moisture separator panel when the vessel was operational.

15. Although NASSCO, in its capacity as ship-repairer, was responsible for conducting and coordinating the ship repair work aboard the McFAUL during its maintenance availability, active-duty military crewmembers assigned to the USS McFAUL (referred to as "ship's force") were jointly responsible for "tagging out" equipment as needed and directed, together with the various "repair authorities" (i.e. the ship repairers responsible for the various ship repair tasks). Accordingly, between January 27-29, 2021, the crew of the McFAUL tagged out the blow-in panel of the No. 2 SSGTG intake moisture separator, as directed. The specific tag-out configuration was compiled, implemented, and confirmed by the crew of the McFAUL, jointly with the repair authority responsible for the work, which in this case was AIT.

16. NASSCO employed a system for coordinating the multitude of ship repair tasks ongoing at any given point in time aboard the vessel. The specific ship repair professionals responsible for specific work prepared a Work Authorization Form (WAF) detailing the work to be done, including specifying if equipment was required to be tagged out to accommodate the work, and if so, how. The WAFs were submitted to a WAF coordinator, a NASSCO employee, who then submitted them to the Navy to configure the tag-out jointly with the repair authority as described above. Once the tag-out was implemented, the work could proceed. NASSCO was responsible for conducting, coordinating, supervising, and overseeing the ship repair work.

17. In the case of the equipment in which the decedent was fatally injured, the crew of the McFAUL configured the tag out of the blow-in panel in the manner directed by AIT and in accordance with the TUM and the Navy's shipboard procedures applicable to both the equipment and the task to be performed. That configuration was then executed by the crew, subject to review

of and approval by the repair authority, AIT. The Navy, together with the repair authority, completed the tag out of the moisture separator blow-in panel on or about January 29, 2021, and turned over the SSGTG intake space back to the control of NASSCO and its contractor, AIT, to perform the work. *See Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 170 (1981).

18. NASSCO and AIT, however, failed to perform the gasket replacement work. Nor did AIT "clear" the tag-out configuration or otherwise indicate that it was not going to be performing the work, so that the blow-in panel could be restored to its normal, closed, and secured position.

19. Approximately six weeks later, on March 15, 2021, NASSCO commenced unrelated welding work in the SSGTG intake space, despite the fact that the blow-in panel of the moisture separator remained tagged out in the open position, at NASSCO and AIT's behest, in that same space.

20. As ship repairer, NASSCO was responsible for coordinating the timing and manner of the ship repair work performed for the maintenance availability. As such, NASSCO was responsible for ensuring that various tag-out configurations in effect at any given time did not conflict with each other or otherwise create hazards.

21. The decedent was employed by ship repair company Harbor Industrial Services (HIS), under contract to either NASSCO or its subcontractor(s). On March 15, 2021, decedent was assigned to work as a "fire watch" for the welding being conducted in or near the space. As fire watch, her job was to stand guard with a fire extinguisher while welding was ongoing to watch for and extinguish any sparks generated by the welding.

22. The space in which the decedent was to act as fire watch was located inboard of the moisture separator in the No. 2 SSGTG intake. Instead of directing the decedent to this location,

NASSCO or its contractors either directed or permitted her to position herself on the outboard side of the moisture separator, despite the fact that the moisture separator would block her access to the space in which she was to be serving as fire watch.

23. At some point shortly thereafter, decedent positioned her body leaning through the open blow-in panel, with her feet on the outboard side of the moisture separator and her head and shoulders on the inboard side. While she was positioned in this manner, the switch controlling the blow-in panel, which was located in a remote part of the ship, was activated in an unknown manner by an unknown third party, despite being tagged-out and equipped with a danger tag prohibiting operation, causing the blow-in panel to close and crush the decedent.

24. Among its other duties as the ship repairer responsible for the maintenance availability, NASSCO was responsible for maintaining overall safety oversight of ship repair work. Nonetheless NASSCO failed to prevent decedent from positioning herself inside the open blow-in panel, subject to a crushing hazard.

## **RULE 14(C) TENDER**

25. To the extent that Plaintiff seeks recovery or judgment against the United States, which denies any liability, the United States, Defendant and Third-Party Plaintiff, hereby impleads and tenders NASSCO and AIT to the Plaintiff within the meaning of Rule 14(c) of the Federal Rules of Civil Procedure.

26. To the extent that Plaintiff alleges liability for negligence based on alleged "failure to properly tag-out and secure the blow-in door" (Count I of Amended Complaint), as set forth above, AIT was the repair authority jointly responsible for the tag-out. Moreover, NASSCO, as the ship-repairer, was in control of the space in which the blow-in panel was located at the relevant time, and, as set forth above, was responsible for coordinating the timing and manner of work in a

safe and workmanlike way that did not create unreasonable hazards and danger to ship repairers. Any alleged duty to use reasonable care to prevent injuries to ship repairers such as the decedent was shared with AIT and NASSCO.

27. To the extent that Plaintiff alleges liability for negligence based on the decedent's "placement as fire watch in a place where she could be crushed by the blow-in door" (Count III of Amended Complaint), as set forth above, the coordination and control of the timing and manner of work aboard the McFAUL, including the placement, direction, and supervision of ship repairers such as the decedent, was the contractual responsibility of NASSCO.  NASSCO controlled the space in which decedent was injured at the time she was injured.  To the extent that the decedent was directed or permitted to "use[] the blow-in door as an access point for repairs," it was NASSCO and/or its subcontractors who did so, and not the United States.  Any alleged duty to prevent injury to longshoremen in performance of the ship repair work for which NASSCO was responsible, belonged to NASSCO.

28. Pursuant to Fed. R. Civ. P. 14(c), Third-Party Defendants NASSCO and AIT are liable and tendered directly as defendants to the plaintiff in this action with respect to the matters alleged in the Amended Complaint.

29. Pursuant to Fed. R. Civ. P. 14(c), the United States hereby demands judgment in favor of Plaintiff and against Third-Party Defendants NASSCO and/or AIT directly.

30. As a direct and proximate result of NASSCO's and AIT's negligence, if judgment is rendered in favor of Plaintiff against the United States of America, the United States may recover over from NASSCO and AIT with respect to any and all fault of Third-Party Defendants NASSCO and AIT.  The United States, as Third-Party Plaintiff, is entitled to, and demands, contribution,

indemnification, recoupment, and/or set-off from NASSCO and AIT for any amounts of money or damages for which the United States is held liable as a result of the accident.

V.

WHEREFORE, the United States of America prays as follows:

1. That if any judgment is entered in favor of the Plaintiff, that said judgment be entered directly against Third-Party Defendants NASSCO and/or AIT;

2. That Plaintiff's Complaint against the United States be dismissed;

3. That should any judgment be entered or recovery be made against the United States, the United States demands that there be a judgment in favor of the United States in like amount over and against NASSCO and AIT; or that judgment be entered or recovery made against NASSCO and AIT for their proportionate shares of liability to Plaintiff; and

4. For such further relief as may be just and proper.

[*Signature page follows.*]

Dated: January 4, 2024    Respectfully submitted,

              UNITED STATES OF AMERICA

              JESSICA D. ABER
              United States Attorney

         By: /s/ *Garry D. Hartlieb*
              Garry D. Hartlieb, IL Bar No. 6322571
              Assistant U.S. Attorney
              Office of the United States Attorney
              101 West Main Street, Suite 8000
              Norfolk, Virginia 23510-1671
              Tel: (757) 441-3173
              Fax: (757) 441-6689
              E-mail: garry.hartlieb@usdoj.gov

              BRIAN M. BOYNTON
              Principal Deputy Assistant Attorney General

         By: /s/ *Malinda R. Lawrence*
              Malinda R. Lawrence, ME Bar No. 004351
              Darren E. Myers, NY Admitted
              Trial Attorneys
              United States Department of Justice
              Civil Division, Torts Branch
              Aviation, Space & Admiralty Litigation
              175 N Street, NE, 8th Floor
              Washington, DC 20002
              Tel: (202) 307-0033/(202) 305-8049
              Fax: (202) 616-4002
              E-mail: Malinda.R.Lawrence@usdoj.gov
              E-mail: Darren.E.Myers@usdoj.gov

              *Attorneys for the United States*