IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| DOUGLAS I. HORNSBY, Administrator of the Estate of CYNTHIA GARY, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES of AMERICA, )<br><br>Defendant/Third-Party Plaintiff, )<br><br>v. )<br><br>METRO MACHINE CORP., d/b/a GENERAL DYNAMICS NASSCO-NORFOLK, et al. )<br><br>Third-Party Defendants. ) | Case No. 2:22-cv-427 |

**DEFENDANT METRO MACHINE CORP.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THIRD-PARTY COMPLAINT AND RULE 14(c) TENDER**

Third-Party Defendant Metro Machine Corp., d/b/a General Dynamics NASSCO-Norfolk ("NASSCO-Norfolk"), by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, files this Memorandum in Support of its Motion to Dismiss the Third-Party Complaint and Rule 14(c) Tender filed by the United States of America ("United States").

## I. INTRODUCTION

Having already been dismissed from this lawsuit once before, the United States now seeks to drag NASSCO-Norfolk back into the litigation. While the United States' Third-Party Complaint adds additional context to the threadbare allegations contained in Plaintiff's Amended Complaint, the allegations against NASSCO-Norfolk remain insufficient to state a claim against NASSCO-Norfolk for maritime negligence. Nowhere in the Amended Complaint or the Third-Party Complaint is NASSCO-Norfolk alleged to have committed any wrongdoing that would

give rise to liability. Simply put, even after the additional allegations, no one can answer the simple question: "What did NASSCO-Norfolk do wrong?"

There are not sufficient facts to assert a plausible maritime negligence claim against NASSCO-Norfolk, and, thus, the Third-Party Complaint must be dismissed.

## II. FACTUAL BACKGROUND

Cynthia Gary ("Decedent") was performing ship repair work on board the USS McFaul, a Navy Destroyer owned and crewed by the United States. (3d Party Compl. ¶ 6, ECF No. 119.) The USS McFaul was "undergoing a months-long, comprehensive maintenance, repair, and restorative ship repair project." (*Id.* ¶ 10.) NASSCO-Norfolk was the prime contractor for the repair work to be performed on the USS McFaul. (*Id.* ¶ 11.)

On January 27, 2021, Advanced Integrated Technologies, LLC ("AIT"), a subcontractor on the repair work, directed that a "blow-in" panel of a moisture separator be "tagged out" in the open position. (*Id.* ¶¶ 12-14.) "Tagging out" is a process in which danger or caution tags are attached to isolate a system or equipment to protect personnel. (*Id.* ¶ 13.) AIT requested the tag out, so AIT could replace the blow-in panel's gasket. (*Id.* ¶ 14.) The tag out was performed by the crew of the USS McFaul and AIT. (*Id.* ¶ 15.) The tag out was performed in the manner directed by AIT and in conformity with the Tag-Out Users Manual and the United States Navy's shipboard procedures. (*Id.* ¶ 17.)

The United States alleges that the gasket replacement was never done and that the tag out was never "cleared." (*Id.* ¶ 18.) On March 15, 2021, the blow-in panel was still tagged out, and there was welding work being performed in the intake space of the moisture separator.[1] (*Id.* ¶

---

[1] It is unclear who was performing the welding work. In the Amended Complaint, Plaintiff alleges that the Decedent was an employee of Blue Staffing Agency and was assigned to work for Harbor Industrial Services, Inc. ("Harbor"). (Am. Compl. ¶¶ 18-19, ECF No. 21.) Harbor was working under a subcontract with Coastal Mechanical Systems, LLC ("Coastal"). (*Id.* ¶ 20.) As such, it is likely that Harbor or Coastal was performing the welding.

19.) The Decedent was assigned to work as a "fire watch" for the welding. (*Id.*¶ 21.) The United States alleges that "[i]nstead of directing the decedent to [a location inside the intake space], NASSCO *or its contractors either directed or permitted* her to position herself on the outboard side of the moisture separator." (*Id.* ¶ 22 (emphasis added).) "At some point shortly thereafter, *decedent positioned her body* leaning through the open blow-in panel" and, "the switch controlling the blow-in panel, *which was located in a remote part of the ship*, was activated *in an unknown manner by an unknown third party. Despite being tagged-out and equipped with a danger tag prohibiting operation.*" (*Id.* ¶ 24 (emphasis added).) The Decedent was then crushed by the blow-in panel. (*Id.*)

### III.  PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on October 14, 2022, and the United States was the only named defendant. (ECF No. 1.) On January 20, 2023, the United States filed its Answer and did not assert any third-party claims. (ECF No. 13.) On March 10, 2022, Plaintiff filed an Amended Complaint, which named the following entities as defendants: United States, NASSCO-Norfolk, Harbor, Coastal, AIT, KD Shipyard Repairs, LLC ("KD Shipyards") and CECO Environmental Corp. ("CECO"). (ECF No. 21.) On May 4, 2023, NASSCO-Norfolk filed an Answer to the Amended Complaint. (ECF No. 61.) The United States filed its Answer to the Amended Complaint on May 9, 2023. (ECF No. 62.)

From April to July 2023, KD Shipyards, Coastal, CECO, and Harbor all filed dispositive motions. (ECF Nos. 54-55, 58-59, 73-74, 82-83.) The Court granted Harbor's motion, and Harbor was dismissed with prejudice. (ECF No. 88.) Magistrate Judge Lawrence R. Leonard held a hearing on September 7, 2023, on the motions filed by KD Shipyards, Coastal, and CECO. (ECF No. 92.) On September 29, 2023, Judge Leonard issued a Report and

3

Recommendation ("R & R"), in which he recommended that KD Shipyard and Coastal be dismissed from the case with prejudice. (ECF No. 93.)[2] The R & R was approved by the Court on December 15, 2023. (ECF No. 111.)

On October 6, 2023, NASSCO-Norfolk filed a Motion for Judgment on the Pleadings. (ECF No. 94.) On October 20, 2023, Plaintiff filed a Motion for Entry of Consent Order Granting Defendant [NASSCO-Norfolk's] Motion for Judgment on the Pleadings Without Prejudice. (ECF No. 97.) On October 27, 2023, the Court entered an Order granting the Consent Motion and dismissed NASSCO-Norfolk without prejudice. (ECF No. 98.) AIT and CECO were dismissed without prejudice in a similar manner. (ECF Nos. 100, 103, 106, 108, 109, 110.) At this point, the United States was the only defendant remaining.

On January 9, 2024, the United States filed a Third-Party Complaint and Rule 14(c) Tender, which named NASSCO-Norfolk and AIT, as Third-Party Defendants. (ECF No. 119.)

## IV. LEGAL STANDARD

Third-Party Defendants, implead under Rule 14(c), are entitled to the same protections afforded by Rule 12(b)(6). *See Burke v. Quick Lift, Inc.*, 464 F. Supp. 2d 150, 161 (E.D.N.Y. 2006); s*ee also Gulf Island Shipyards, LLC v. Mediterranean Shipping Co. (USA), Inc.*, 2023 WL 7735432, at *2 (S.D.N.Y. Nov. 15, 2023). A third-party defendant "must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim." Fed. R. Civ. P. 14(c). "The impleaded third-party defendant may assert any defenses to the [third-party plaintiff's] claim . . . in the manner provided in Rule 12." *Burke*, 464 F.Supp.2d at 161 (internal quotations

---

[2] Judge Leonard recommended dismissal without leave to amend based on several statements from the hearing: (1) Plaintiff's statement that "the [C]omplaint is woefully short of facts" and that "nobody knows what happened"; (2) Plaintiff's acknowledgement that the United States Navy and the Occupational Safety and Health Administration conducted investigations and were unable to explain why the blow-in panel shut; and (3) Plaintiff's admission that "nobody knows what happened." (R &R at 8, 10.) Additionally, at the hearing, Plaintiff stated that "we don't know how [the decedent] got in harms way" and "we don't know if it was human error." (Hr'g Tr. 14:10-11, 18-19, ECF No. 92.)

4

omitted).

Therefore, the same standards that govern a typical Rule 12(b)(6) motion apply here as well. The complaint must contain sufficient factual allegations to state a plausible claim for relief and allow the court to draw a reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009). These factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007). Neither the Amended Complaint nor the Third-Party Complaint contain sufficient allegations to satisfy this standard.

## V. ARGUMENT

The United States' Rule 14(c) Tender alleges that NASSCO-Norfolk is liable under Counts I and III both alleging maritime negligence. To state a negligence claim under maritime law, the plaintiff must show:

> (1) the existence of a duty required by law that obligates a person to conform to a certain standard of conduct to protect others against unreasonable risks of harm; (2) a breach of said duty by engaging in conduct that falls below the applicable standard; (3) a causal connection between the improper conduct and the resulting injury; (4) an actual loss or injury to the plaintiff because of the improper conduct."

*Gauthreaux v. United States*, 712 F. Supp. 2d 458, 464 (E.D. Va. 2010). "Even in these days of notice pleadings a complaint asserting a negligence claim must disclose that each of the elements is present in order to be sufficient." *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002). The allegations in the Amended Complaint and Third-Party Complaint fail to establish a duty or a breach by NASSCO-Norfolk.

The Court has already stated that Plaintiff "failed to articulate any facts at all regarding what actually caused the blow-in door to close." (R & R at 7, ECF No. 93.) The Court found the allegations regarding duty, breach, and causation were "threadbare" and insufficient. (*Id.*) Thus,

for the claim against NASSCO-Norfolk to survive, the Third-Party Complaint must add allegations sufficient to get the "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547.

While the United States has added additional factual allegations, the Amended Complaint and Third-Party Complaint still fail to plausibly allege a claim against NASSCO-Norfolk. The Third-Party Complaint contains no non-conclusory allegations that could give rise to an inference of liability. The United States contends that NASSCO-Norfolk "was in control of the space in which the blow-in panel was located at the relevant time, and . . . was responsible for coordinating the timing and manner of work in a safe and workmanlike way." (3d Party Compl. ¶ 26.) The United States claims that "any alleged duty to use reasonable care to prevent injuries to ship repairers such as the decedent was shared with AIT and NASSCO." (*Id.* ¶ 27.) Neither the Plaintiff nor the United States allege the source of the duty, nor do they allege any action or omission of NASSCO-Norfolk that constitutes a breach of said duty.

The Third-Party Complaint alleges that AIT requested that the moisture separator be tagged out, that it was tagged out, and that the United States Navy crew performed the tag out. (*Id.* ¶¶ 12-15.) The tag out was performed in accordance with the Tag-Out Users Manual and the United States Navy's shipboard procedures. (*Id.* ¶ 17.) No one cleared the tag out prior to the incident. (*Id.* ¶ 18.) The United States alleges that "NASSCO *or* its contractors *either directed or permitted*" the Decedent to stand on the outboard side of the moisture separator. (*Id.* ¶ 22 (emphasis added).) "*At some point* shortly thereafter, decedent *positioned her body* leaning through the open blow-in panel." (*Id.* ¶ 23 (emphasis added).) The United States then alleges "the switch controlling the blow-in panel . . . was activated in an *unknown manner by an unknown third party despite being tagged out and equipped with a danger tag prohibiting*

6

*operation.*" (*Id.* (emphasis added).)  To summarize, the blow-in panel was properly tagged out and remained tagged out, *someone* positioned Decedent in the wrong area, Decedent *moved herself* into the specific position, and *someone somehow* activated the blow-in panel.  Again, the question is "What did NASSCO-Norfolk do wrong?" At most, these allegations allege liability to a speculative degree, but they certainly do not allege liability to a plausible degree.  Thus, the allegations fail to satisfy the *Twombly-Iqbal* pleading standard.

The Amended Complaint and the Third-Party Complaint only provide conclusory allegations regarding the existence of a duty.  And none of the allegations state how *NASSCO-Norfolk* breached said duty. As such, the Third-Party Complaint must be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, Metro Machine Corp., d/b/a General Dynamics NASSCO-Norfolk, respectfully requests an order dismissing the Third-Party Complaint with prejudice under Rule 12(b)(6) and granting all other just relief.

Respectfully submitted,

METRO MACHINE CORP.,
D/B/A GENERAL DYNAMICS NASSCO-
NORFOLK

By:   /s/ *Lynn K. Brugh, IV*
       Lynn K. Brugh, IV
       Virginia State Bar No. 36778
       Counsel for Defendant
       WILLIAMS MULLEN
       200 South 10th Street, Suite 1600
       Richmond, Virginia 23219
       Telephone: (804) 420-6461
       Facsimile: (804) 420-6507
       lbrugh@williamsmullen.com

       John Arch Irvin
       Virginia State Bar No. 97044
       Counsel for Defendant
       WILLIAMS MULLEN
       200 South 10th Street, Suite 1600
       Richmond, Virginia 23219
       Telephone: (804) 420-6140
       Facsimile: (804) 420-6507
       jirvin@williamsmullen.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of January 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

       By:   /s/ *Lynn K. Brugh, IV*
       Lynn K. Brugh, IV
       Virginia State Bar No. 36778
       Counsel for Defendant
       WILLIAMS MULLEN
       200 South 10th Street, Suite 1600
       Richmond, Virginia 23219
       Telephone: (804) 420-6461
       Facsimile: (804) 420-6507
       lbrugh@williamsmullen.com