**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| DOUGLAS I. HORNSBY, Administrator | ) | |
| of the Estate of CYNTHIA GARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-427 |
| | ) | |
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| METRO MACHINE CORP., d/b/a | ) | |
| GENERAL DYNAMICS NASSCO-NORFOLK,   et al. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**DEFENDANT METRO MACHINE CORP.'S REPLY IN SUPPORT OF ITS MOTION**
**TO DISMISS THIRD-PARTY COMPLAINT AND RULE 14(c) TENDER**

Third-Party Defendant Metro Machine Corp., d/b/a General Dynamics NASSCO-Norfolk

("NASSCO-Norfolk"), by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, files this Reply in Support of its Motion to Dismiss the Third-Party Complaint and

Rule 14(c) Tender filed by the United States of America ("United States").

## I.   INTRODUCTION

NASSCO-Norfolk is still left without an answer to the question, "what did we do

wrong?"  The United States has simply argued that the mere fact that NASSCO-Norfolk was

the prime contractor for repairs on the USS McFaul renders it susceptible to maritime

negligence claims.  Even though NASSCO-Norfolk was the prime contractor, Plaintiff and

the United States must still meet the *Iqbal-Twombly* pleading standard. Maritime negligence

is not a strict liability tort, there must still be allegations that a duty was breached.  The

Amended Complaint and the Third Party Complaint fail to meet this low standard.

## II. ARGUMENT

The United States's Response in Opposition boils down to an argument that three sets of allegations sufficiently stated a claim for maritime negligence: (1) NASSCO-Norfolk was the prime contractor; (2) the actions of its subcontractor, Advanced Integrated Technologies, LLC ("AIT"), are attributable to NASSCO-Norfolk; and (3) NASSCO-Norfolk placed Cynthia Gary (the "Decedent") near the blow-in panel. Even if these allegations are taken as true, Plaintiff and the United States have still failed to state a claim.

### A.  A Prime Contractor is not Strictly Liable for Injuries.

According to the United States, an allegation that an entity is a prime contractor is sufficient to state a claim against it for maritime negligence, and, thus, the allegation that NASSCO-Norfolk was "hired by the Navy to conduct, coordinate, supervise, and oversee *all* of the work on the USS McFaul" is enough for the claim to survive dismissal. Opp'n at 6, ECF No. 129. This argument would subject prime contractors to strict liability for maritime negligence claims. This does not comport with maritime law.

Maritime negligence is not a strict liability tort. *See Garris v. Norfolk Shipbuilding & Drydock Corp.*, 210 F.3d 209, 223 (4th Cir. 2000) ("***In contrast to negligence***, unseaworthiness is a strict liability theory . . ."); *State of Md. Dep't of Nat. Res. v. Kellum*, 51 F.3d 1220, 1228 (4th Cir. 1995) (holding that a Maryland law imposing strict liability was preempted by general maritime law regarding negligence which did not impose strict liability).  Under maritime negligence, a plaintiff must still allege facts to support the element of breach. *See Gauthreaux v. United States*, 712 F. Supp. 2d 458, 464 (E.D. Va. 2010).

While there are allegations that NASSCO-Norfolk was the prime contractor and

2

responsible for safety on board, there are no allegations that sufficiently allege that a duty was breached. As such, the Amended Complaint and Third-Party Complaint have failed to state a claim for maritime negligence.

### B. AIT's Alleged Actions are also Insufficient to State Claim.

The United States argues that AIT's actions are directly attributable to NASSCO-Norfolk due to the prime contractor-subcontractor relationship. Specifically, the United States alleges that "NASSCO was solely responsible for selecting, hiring, directing, and overseeing performance by its subcontractor AIT," and that AIT requested the tag out of the blow-in panel. Opp'n at 5-6. Even if NASSCO-Norfolk is directly liable for actions taken by AIT, the Amended Complaint and Third-Party Complaint fail to allege facts sufficient to sustain a claim against AIT. *See* Mem. Supp. AIT's Mot. to Dismiss, ECF No. 125.

The allegations that AIT requested the tag out and that the blow-in panel was still tagged out when the incident occurred are insufficient to sustain this action. Especially since the only allegation related to why the blow-in panel closed are that it was "activated in an ***unknown manner by an unknown third party***, despite being tagged-out and equipped with a danger tag prohibiting operation." 3d Party Compl. ¶ 23, ECF No. 119 (emphasis added). It is also abundantly clear from the Report and Recommendation that, as even Plaintiff has acknowledged, "nobody knows what happened." R. & R. at 8, ECF No. 93. The Report and Recommendation acknowledged that there were insufficient facts to sustain a claim against the subcontractor repairing the switchboard that controlled the blow-in panel and the subcontractor performing the welding near the blow-in panel. *Id.* at 6, 10. If the facts are insufficient to state a claim against these two entities, then the allegations are certainly insufficient to state a claim against NASSCO-Norfolk.

The allegations against the subcontractors, even if imputed to NASSCO-Norfolk, fail to properly allege a breach. Again, this is not a strict liability tort, and a claim cannot be asserted against NASSCO-Norfolk simply because an unexplained accident occurred.

### C. Neither Pleading Actually Alleges that NASSCO-Norfolk Placed Decedent Within Range of the Blow-In Panel.

The United States argues that Plaintiff "*effectively alleges* that the placement of Ms. Gary in proximity to the blow-in panel while it was tagged out in the open position created a hazard." Opp'n at 6 (emphasis added) (original emphasis removed). The words "effectively alleges" do a lot of legwork in that sentence. The actual allegations in the Amended Complaint do not state that NASSCO-Norfolk was responsible for her positioning nor does the Third-Party Complaint allege that NASSCO-Norfolk placed Decedent within range of the blow-in panel.

First, the United States stretches the allegations in the Amended Complaint too far. Plaintiff only alleges that "Gary was positioned as fire watch on the exterior side of a blow-in door for one of the McFaul's gas turbine engines. The blow-in door was tagged-out in the open position while work was being done." Am. Compl. at 4, ECF No. 21. Plaintiff never alleges who positioned Decedent nor does Plaintiff allege that Decedent's position near the blow-in panel alone constituted a hazard.

Second, the allegations in the Third-Party Complaint do not cure this deficiency. The United States argues that NASSCO-Norfolk assigned Decedent "to work as fire watch for welding work commenced in the space where the blow-in panel remained tagged out in the open position." Opp'n at 6.  However, the actual allegations in the Third-Party Complaint differ significantly. It alleges that "decedent was assigned to work as a 'fire watch' for the welding being conducted." 3d Party Compl. ¶ 21. Like the corresponding allegation in the Amended Complaint, this allegation does not state who assigned Decedent to that role. Moreover, merely

assigning Decedent to work as a fire watch is not negligence. The Third-Party Complaint also alleges, "NASSCO *or* its contractors *either* directed *or permitted* her to position herself on the outboard side of the moisture separator." *Id.* ¶ 22 (emphasis added). Again, it is not clear who, if anyone, positioned the Decedent. Notably, in its Opposition, the United States fails to mention that the Decedent "positioned her body leaning through the open blow-in panel." *Id.* ¶ 23. To be clear, the allegation is that Decedent positioned herself in the way of the blow-in panel. There is no allegation that NASSCO-Norfolk, nor any of its sub-contractors for that matter, instructed Decedent to be in such a position.  All we are left with are allegations that Decedent was assigned to the fire watch and was in the general vicinity of a tagged out blow-in panel neither of which are sufficient to state a claim for maritime negligence.

### III. CONCLUSION

For the foregoing reasons, Metro Machine Corp., d/b/a General Dynamics NASSCO-Norfolk, respectfully requests an order dismissing the Third-Party Complaint with prejudice under Rule 12(b)(6) and granting all other just relief.

Respectfully submitted,

METRO MACHINE CORP.,
D/B/A GENERAL DYNAMICS NASSCO-
NORFOLK

By:    /s/ *Lynn K. Brugh, IV*
Lynn K. Brugh, IV
Virginia State Bar No. 36778
Counsel for Defendant
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

John Arch Irvin
Virginia State Bar No. 97044
Counsel for Defendant
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6140
Facsimile: (804) 420-6507
jirvin@williamsmullen.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February 2024, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

to all counsel of record.

By:   /s/ *Lynn K. Brugh, IV*
Lynn K. Brugh, IV
Virginia State Bar No. 36778
Counsel for Defendant
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

6