UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**DOUGLAS I. HORNSBY, Administrator of the Estate of CYNTHIA GARY,**

    Plaintiff,

  v.                                      CIVIL NO.: 2:22cv427

**UNITED STATES OF AMERICA,**

    Defendant/Third-Party Plaintiff,

  v.

**METRO MACHINE CORP., d/b/a GENERAL DYNAMICS NASSCO-NORFOLK,**

**and**

**ADVANCED INTEGRATED TECHNOLOGIES, LLC,**

    Third-Party Defendants.

## MEMORANDUM ORDER

This matter comes before the court on two Motions to Dismiss, one filed by Third-Party Defendant, Advanced Integrated Technologies, LLC ("AIT"), on January 29, 2024, and the other filed by Third-Party Defendant, Metro Machine Corp., d/b/a General Dynamics NASSCO-Norfolk ("NASSCO") on January 30, 2024. ECF Nos. 124 ("AIT's Motion"), 126 ("NASSCO's Motion"). Both AIT and NASSCO ask the court to dismiss the Third-Party Complaint and Rule 14(c) Tender filed by Defendant and Third-Party Plaintiff, the United States, on January 9, 2024. For the reasons explained below, the court **DENIES** AIT's Motion and **DENIES** NASSCO's Motion.

## I. Factual and Procedural History

This matter arises from the death of Ms. Cynthia Gary ("Decedent") while working on board the USS McFaul ("the McFaul") on March 15, 2021. ECF No. 21 at ¶ 2 ("Amended Complaint").[1] The McFaul is owned by the United States and was docked for repairs at a shipyard owned by NASSCO. Id. at ¶¶ 4-5. NASSCO was also the prime contractor responsible for work on the McFaul. Id. at ¶ 5. NASSCO employed multiple subcontractors, including Third-Party Defendant, AIT. Id. at ¶ 8. Decedent died after an open blow-in panel[2] unexpectedly closed, crushing her to death. Id. at ¶ 27. The blow-in panel covered an opening in a moisture separator that was located within the air intake shaft of a gas turbine generator. ECF No. 119 at ¶¶ 12, 14 (Third-Party Complaint). The panel could open and close but was normally closed. Id. at ¶ 14.

On or about January 27, 2021, approximately six (6) weeks before Decedent's death, AIT directed that the blow-in panel be "tagged out" in the "open position."[3] Id. at ¶¶ 12-14. AIT sought

---

[1] The court draws the following facts from the Amended Complaint and Third-Party Complaint, which it accepts as true and views in the light most favorable to the non-moving party for the purposes of ruling on the instant motions to dismiss. E.g., Kensington Volunteer Fire Dep't, Inc. v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012).

[2] Plaintiff's Amended Complaint refers to the blow-in panel as the "blow-in door." E.g., ECF No. 21 at ¶ 21.

[3] "Tagging out" a piece of equipment is "a process of hanging danger or caution tags to isolate a system or equipment to protect personnel or equipment." ECF No. 119 at ¶ 13 (quoting Tag-Out Users

2

to tag-out the blow-in panel in the "open position" because AIT planned to replace a rubbery, adhesive lining (called a "gasket") along the perimeter of the blow-in panel's surface. Id. at ¶ 14. The gasket would seal the blow-in panel's perimeter when it was closed. Id. NASSCO helped coordinate and oversee tag-outs for ship repair work. Id. at ¶¶ 16, 20.

The Navy then tagged out the blow-in panel in the open position, subject to AIT's review and approval, on or about January 29, 2021. Id. at ¶¶ 15, 17. After the tag-out, NASSCO and AIT did not perform the gasket-replacement work on the blow-in panel. Id. at ¶¶ 17-18. Nor did AIT "clear" the blow-in panel's open position or otherwise indicate that AIT would not be working on the blow-in panel so that the panel could be returned to its normal, closed position. Id. at ¶ 18.

The blow-in panel remained tagged out in the open position approximately six (6) weeks later, on March 15, 2021, when NASSCO commenced unrelated welding work near the blow-in panel, on the interior side of the moisture separator where the blow-in panel was located. Id. at ¶¶ 19, 22. Decedent was assigned to work as a "fire watch" for the welding work. Id. at ¶ 21. Instead of directing Decedent to the interior side of the moisture separator panel, where the welding work was to occur, "NASSCO or its

---

Manual, S0400-AD-URM-010/TUM (U.S. Navy, Oct. 2020 ed.)).

3

contractors either directed or permitted" Decedent to position herself on the exterior side. Id. at ¶ 22. Decedent then leaned through the open blow-in panel, with her feet on the exterior side and her head and shoulders on the interior side. Id. at ¶¶ 22-23. As she stood in that position, the blow-in panel unexpectedly closed onto Decedent and crushed her. Id. at ¶ 23.

Decedent's estate, the Plaintiff in this matter, filed a Complaint against the United States on October 14, 2022, ECF No. 1, and an Amended Complaint against the United States, NASSCO, AIT, and other subcontractors aboard the McFaul on March 10, 2023, ECF No. 21. This is an admiralty or maritime claim under Federal Rule of Civil Procedure 9(h). ECF Nos. 21 at ¶ 13, 119 at ¶ 9. On October 20, 2023, Plaintiff moved to dismiss NASSCO from the case without prejudice. ECF No. 97. The court granted this motion on October 27, 2023, and dismissed NASSCO without prejudice. ECF No. 98. On November 8, 2023, Plaintiff moved to dismiss his claims against AIT without prejudice. ECF No. 106. The court granted this motion on November 13, 2023, and dismissed the claims against AIT without prejudice. ECF No. 109.

Through various orders, the court dismissed every other defendant in this case, except the United States. See ECF Nos. 88, 110, 111. This includes the dismissal, with prejudice, of two subcontractors, KD Shipyard Repairs, LLC ("KDSR") and Coastal Mechanical Systems, LLC ("Coastal"), after Magistrate Judge

4

Lawrence R. Leonard issued a Report and Recommendations ("R&R") finding that Plaintiff failed to adequately allege negligence claims against KDSR and Coastal. See ECF No. 93 at 6-7, 9. The undersigned judge then adopted and approved in full the R&R's recommendations and dismissed KDSR and Coastal with prejudice. ECF No. 111 at 13-14.

On January 4, 2024, the United States filed an unopposed Motion for Leave to File a Third-Party Complaint and Rule 14(c) Tender against NASSCO and AIT. ECF No. 114. The court granted this motion on January 9, 2024, ECF No. 118, and on the same day, the United States filed its Third-Party Complaint and Rule 14(c) Tender, ECF No. 119.

On January 29, 2024, AIT filed its Motion to Dismiss and a Memorandum in Support. ECF Nos. 124, 125. NASSCO filed its Motion to Dismiss and a Memorandum in Support on January 30, 2024. ECF Nos. 126, 127. The United States filed Responses in Opposition to both Motions on February 12, 2024. ECF Nos. 128 (Response to AIT), 129 (Response to NASSCO). NASSCO replied on February 19, 2024, ECF No. 130, and the United States filed a Corrected Response in Opposition to NASSCO's Motion on February 20, 2024, ECF No. 133. The United States also filed a Corrected Response in Opposition to AIT's Motion on February 20, 2024, ECF No. 132.[4] AIT replied on

---

[4] Both Corrected Responses removed one sentence that contained an incorrect citation. ECF No. 131 (Notice of Corrected Briefs).

February 20, 2024, ECF No. 134. Both AIT's and NASSCO's Motions to Dismiss are now ripe for review.

## II. Legal Standard

When a plaintiff asserts an admiralty or maritime claim, as Plaintiff did here against the United States, the defendant "may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable — either to the plaintiff or to the third-party plaintiff — for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 14(c)(1). If the defendant then files a third-party complaint as a third-party plaintiff, "the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff." Fed. R. Civ. P. 14(c)(2). Therefore, a third-party defendant may challenge a third-party complaint in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and in reviewing that challenge, the court considers both the plaintiff's complaint and the third-party plaintiff's third-party complaint. See, e.g., Atl. Specialty Ins. Co. v. Bindea, 656 F. Supp. 3d 624, 642 (W.D. Va. 2023); Burke v. Quick Lift, Inc., 464 F. Supp. 2d 150, 160-61 (E.D.N.Y. 2006).

6

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal citations omitted). However, any "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. If the allegations fail to state a claim upon which relief can be granted, the complaint must be dismissed. See Fed. R. Civ. P. 12(b)(6).

### III. Analysis

Both AIT and NASSCO seek to dismiss the Third-Party Complaint and Rule 14(c) Tender under Rule 12(b)(6). ECF Nos. 124, 126.[5] The parties contest whether the Third-Party Complaint advances a claim of maritime negligence against AIT and NASSCO. See ECF Nos. 125 at 1, 127 at 5, 132 at 7, 133 at 7-8. The elements of a maritime negligence claim are:

---

[5] AIT and NASSCO do not contest that the United States properly impleaded them as parties under Rule 14(c). ECF Nos. 125, 127.

7

>    (1) the existence of a duty required by law that obligates a person to conform to a certain standard of conduct to protect others against unreasonable risks of harm; (2) a breach of said duty by engaging in conduct that falls below the applicable standard; (3) a causal connection between the improper conduct and the resulting injury; (4) an actual loss or injury to the plaintiff because of the improper conduct.

Gauthreaux v. United States, 712 F. Supp. 2d 458, 464 (E.D. Va. 2010) (Jackson, J.). The maritime law of negligence recognizes a duty of reasonable care under the circumstances. See McAllister Towing of Va., Inc. v. United States, No. 2:10cv595, 2012 WL 1438770, at *8 (E.D. Va. Apr. 25, 2012) (Jackson, J.) (citing In Re Christiansen Marine, Inc., No. 2:95cv896, 1996 WL 616188, at *8 (E.D. Va. Apr. 11, 1996) (Smith, J.)). This is the duty that a contractor working on a vessel owes the employees of other contractors who are working on ship repairs. See, e.g., Peters v. Titan Nav. Co., 857 F.2d 1342, 1344 (9th Cir. 1988); Becker v. Tidewater, Inc., 335 F.3d 376, 387 (5th Cir. 2003).

### A. AIT

AIT argues the Amended Complaint and Third-Party Complaint do not support a claim of negligence against it. ECF No. 125 at 4. The United States responds that AIT was negligent in how it configured and reviewed the tag-out of the blow-in panel and by "leaving the blow-in panel open instead of clearing the tag-out." ECF No. 132 at 5-7.

8

### 1. Duty

The Amended Complaint alleges AIT, along with NASSCO and other subcontractors including KDSR and Coastal, "jointly and severally, owed a duty to [Decedent] to use reasonable care to provide a safe working environment and to warn her of potential dangers." ECF No. 21 at ¶ 47. After KDSR and Coastal moved to dismiss Plaintiff's negligence claim against them, Magistrate Judge Leonard's R&R, which the undersigned judge adopted, found that duty was "nothing more than a conclusory assertion" that "fails to establish that a specific duty was owed." ECF Nos. 93 at 7, 111 (Opinion adopting and approving R&R).

The Third-Party Complaint adds that AIT, along with the Navy, was "jointly responsible for the tag-out" of the blow-in panel in the open position. ECF No. 119 at ¶ 26. Specifically, AIT was responsible for directing the configuration of the tag-out, which "was compiled, implemented, and confirmed by the crew of the McFAUL, jointly with . . . AIT." Id. at ¶¶ 14-15. Although the Navy was responsible for executing the tag-out, AIT was responsible for reviewing and approving the tag-out's configuration. Id. at ¶ 17. Given these specific allegations, the Third-Party Complaint sufficiently supplements the Amended Complaint to allege that AIT owed Decedent a duty to use reasonable care in conducting its tag-out responsibilities.

## 2. Breach and Causation

The Amended Complaint and Third-Party Complaint must also allege that AIT breached its duty to Decedent and caused her injuries. The Amended Complaint states that AIT, along with NASSCO and three other subcontractors, including KDSR and Coastal,

> jointly and severally, breached their duty to [Decedent] by, among other things, negligently failing to warn [Decedent] of the dangers of the blow-in door, failing to properly tag-out and secure the blow-in door, failing to ensure that the blow-in door had been properly tagged-out and secured by the crew of the McFaul . . . and by otherwise failing to use reasonable care to warn [Decedent] or prevent the blow-in door from closing unexpectedly and injuring [Decedent].

ECF No. 21 at ¶ 48. The R&R evaluated this allegation of a joint and several breach as to KDSR and Coastal and found it inadequate. ECF No. 93 at 6-7, 9. The allegation merely claimed "several speculative breaches" without "advanc[ing] any specific theory" of a breach. Id. at 6-7.

The Third-Party Complaint alleges that AIT breached its duty to Decedent in how it (i) reviewed and approved the tag-out of the blow-in panel on or around January 27-29, 2021, and (ii) allowed the blow-in panel to stay tagged out in the open position for weeks after the tag-out was executed, until March 15, 2021, when Decedent was injured. ECF No. 119 at ¶¶ 15-18. Starting with the tag-out's execution and the process preceding it, the Third-Party Complaint states AIT directed the tag-out's configuration, which the Navy then executed subject to AIT's review and approval. Id. at ¶ 17.

10

Given AIT's role in reviewing and approving the tag-out, the United States argues that AIT would be liable "if a trier of fact ultimately were to conclude, as the plaintiff contends, that the tag-out was improper and negligently performed." ECF No. 132 at 6. The Plaintiff's assertion that the blow-in panel was improperly tagged out finds support in the Amended Complaint. Viewed in the light most favorable to the non-moving party, it alleges that the blow-in panel "was not disconnected from potential sources of energy that could cause it to close suddenly, and was not otherwise secured to prevent it from closing." ECF No. 21 at ¶ 25. Notably, the Third-Party Complaint adds that the tag-out's configuration complied with Navy procedures and the Tag-Out Users Manual. ECF No. 119 at ¶ 17. However, compliance with such procedures does not necessarily foreclose liability. See Gauthreaux, 712 F. Supp. 2d at 465 ("A vessel may fashion private safety rules to govern the conduct of its crew members. However, 'whether a given course of conduct is negligent, or the exercise of reasonable care[,] must be determined by the standard fixed by law, without regard to any private rules of the party.'") (quoting Hottle v. Beech Aircraft Corp., 47 F.3d 106, 110 (4th Cir. 1995)). For these reasons, the Amended Complaint and Third-Party Complaint adequately allege that AIT breached its duty to Decedent by improperly or negligently performing its tag-out duties on or around January 27-29, 2021.

11

The Third-Party Complaint also alleges AIT breached its duty to Decedent by keeping the blow-in panel tagged out in the open position for six (6) weeks, during which time AIT did not complete the gasket-replacement work that prompted the tag-out. ECF No. 119 at ¶¶ 18-19; <u>see</u> ECF No. 132 at 6-7 (United States' brief arguing that Decedent was injured as "the result of AIT's negligence[] in leaving the blow-in panel open instead of clearing the tag-out"). AIT counters that there is no allegation that AIT had a duty to complete the gasket-replacement work earlier or that the work could be completed earlier "given the conditions of the vessel and the other ongoing work." <u>See</u> ECF No. 134 at 2. Although AIT raises these important points, there remains an open question of why, after six (6) weeks of not completing the gasket-replacement work, AIT did not clear the tag-out to allow the blow-in panel to return to its normal, closed position. That unanswered factual question should be developed in the discovery process.

Finally, to the extent the Amended and Third-Party Complaints allege AIT was negligent in its role in tagging out the blow-in panel and letting it stand open for six (6) weeks, the Complaints allege those actions caused Decedent's injuries when the blow-in panel unexpectedly closed onto her. ECF Nos. 21 at ¶ 49, 119 at ¶¶ 26, 30. Thus, the Third-Party Complaint has "nudged" Plaintiff's claims against AIT "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Consequently, the court

will not dismiss the United States' Third-Party Complaint and Rule 14(c) Tender as to AIT at this juncture before the discovery process.

### B. NASSCO

NASSCO argues dismissal is appropriate because "[t]he allegations in the Amended Complaint and Third-Party Complaint fail to establish a duty or a breach." ECF No. 127 at 5. The United States counters that NASSCO was negligent in how it controlled, coordinated, and supervised ship repair work, including tag-outs, within the space where Decedent was injured. ECF No. 133 at 5-7.

### 1. Duty

The Amended Complaint alleges NASSCO "owed a duty to [Decedent] to use reasonable care to provide a safe working environment and to warn her of potential dangers." ECF No. 21 at ¶ 47. As discussed above, the court previously found this allegation was too conclusory to establish that two subcontractors, KDSR and Coastal, owed a specific duty to Decedent. See supra Part III.A.1. However, as discussed above for AIT, see id., the Third-Party Complaint likewise specifies NASSCO's alleged duty. It claims that NASSCO, in its role as ship-repairer in control of the space where the blow-in panel was located when Decedent was injured, "was responsible for coordinating the timing and manner of work in a safe and workmanlike way that did not create unreasonable hazards and danger to ship repairers." ECF

13

No. 119 at ¶ 26.

The Third-Party Complaint further alleges NASSCO had a "contractual responsibility" to coordinate and control the timing and manner of work aboard the McFaul, "including the placement, direction, and supervision of ship repairers such as the decedent." Id. at ¶ 27. The Third-Party Complaint also alleges a duty to "prevent injury to longshoremen in performance of the ship repair work for which NASSCO was responsible." Id. Therefore, the Third-Party Complaint sufficiently supplements the Amended Complaint to allege that NASSCO owed Decedent a duty of reasonable care in coordinating and controlling the timing and manner of work aboard the McFaul. Id. at ¶ 27.

### 2. Breach and Causation

The court now turns to whether the Amended Complaint and Third-Party Complaint sufficiently allege that NASSCO breached its duty to Decedent. As noted above, the Amended Complaint did not establish a breach as to KDSR and Coastal because its allegations were too speculative and nonspecific. See supra Part III.A.2. As addressed below, the Third-Party Complaint, by contrast, specifies how NASSCO negligently controlled, coordinated, and supervised ship repair work within the space where Decedent was injured.

First, the Third-Party Complaint alleges NASSCO maintained a detailed system for coordinating and supervising its subcontractors' tag-outs. See ECF No. 119 at ¶ 16. After the

14

blow-in panel was tagged out in the open position at AIT's direction, NASSCO and AIT did not perform the gasket-replacement work on the blow-in panel for approximately six (6) weeks. <u>Id.</u> at ¶ 18.[6] The blow-in panel remained open when NASSCO commenced a welding job near the interior side of the blow-in panel, on the interior side of the moisture separator. <u>Id.</u> at ¶¶ 19, 22. The Third-Party Complaint next alleges that "NASSCO or its contractors either directed or permitted [Decedent] to position herself on the outboard side of the moisture separator, despite the fact that the moisture separator would block her access to the space in which she was to be serving as fire watch." <u>Id.</u> at ¶ 22. Finally, it alleges that "NASSCO failed to prevent decedent from positioning herself inside the open blow-in panel, subject to a crushing hazard." <u>Id.</u> at ¶ 24.

In its briefs, NASSCO argues the Third-Party Complaint is too vague in alleging that "NASSCO or its contractors either directed or permitted" Decedent to be positioned where she was when she was injured. ECF Nos. 127 at 6-7 (citing ECF No. 119 at ¶ 22), 130 at 5 (same). Likewise, NASSCO highlights the Third-Party Complaint's allegation that "an unknown third party" activated a switch that caused the blow-in panel to close. ECF Nos. 127 at 6-7

---

[6] As previously stated, the open factual question of why the blow-in panel stayed open for six (6) weeks remains to be resolved in discovery. <u>See</u> <u>supra</u> Part III.A.2.

(citing ECF No. 119 at ¶ 23), 130 at 3 (same).[7] NASSCO has focused on these limited portions of the Third-Party Complaint, and, standing alone, they may not suffice to state a negligence claim against NASSCO. However, the Third-Party Complaint as a whole suffices. In other words, taken in the light most favorable to the United States, the Third-Party Complaint alleges that NASSCO improperly coordinated and supervised its subcontractors' work on and around the blow-in panel, including by allowing the blow-in panel to stand open for six (6) weeks. ECF No. 119 at ¶¶ 16-22. It also alleges NASSCO did not prevent Decedent from placing herself inside the open blow-in panel. Id. at ¶ 24. Finally, it claims that these actions caused Decedent to be injured. Id. at ¶¶ 26, 27, 30. Accordingly, the court will not dismiss the United States' Third-Party Complaint and Rule 14(c) Tender as to NASSCO at this juncture before the discovery process.[8]

### IV. Conclusion

For the reasons stated above, AIT's Motion to Dismiss, ECF No. 124, is **DENIED**, and NASSCO's Motion to Dismiss, ECF No. 126, is **DENIED**. The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel for all parties. The case shall proceed forthwith pursuant to the court's Order entered January 22, 2024. ECF No. 123.

---

[7] Discovery in this case may well reveal the "unknown third party."

[8] See, e.g., supra note 7 and accompanying text.

16

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

March 22, 2024