**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

DOUGLAS I. HORNSBY, Administrator
of the Estate of CYNTHIA GARY,

Plaintiff,

v. Case No.: 2:22cv427

UNITED STATES OF AMERICA, *et al*.,

Defendants.

**ADVANCED INTEGRATED TECHNOLOGIES, LLC'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The failure of the Plaintiff Douglas I. Hornsby ("Plaintiff") and the Defendant/Third-Party Plaintiff United States of America (the "United States") to identify any expert witness in this case to support any affirmative claims against AIT is fatal. AIT therefore seeks summary judgment and prays that the claims against it be dismissed with prejudice.

## I. PROCEDURAL HISTORY

1. Plaintiff, Douglas I. Hornsby, Administrator of the Estate of Cynthia Gary ("Plaintiff"), filed his original complaint against the United States of America only on October 14, 2022. Dkt. No. 1.

2. The United States answered on January 20, 2023, and asserted no third-party claims. Dkt. No. 13.

3. Plaintiff later amended his complaint to add claims against various contractors and subcontractors, including Advanced Integrated Technologies, LLC. Dkt. No. 21.

4. During a hearing regarding the Amended Complaint, Plaintiff admitted that the Amended Complaint was "woefully short of facts," among other concessions. Dkt. No. 92, at 13:16.

5. Based upon the concessions at the hearing and the content of the Amended Complaint, the Honorable Lawrence R. Leonard issued a Report and Recommendation dismissing claims against several defendants, which was later adopted by the Court. Dkt. Nos. 93, 111.

6. Based upon the lack of facts against AIT, Plaintiff voluntarily dismissed his claims against AIT on November 13, 2023. Dkt. No. 109.

7. After the Plaintiff's claims against AIT were dismissed, the United States moved for and was permitted to file a Third-Party Complaint. Dkt. No. 118.

8. On January 9, 2024, the United States filed a Third-Party Complaint and Rule 14(c) Tender against AIT and Metro Machine Corp., d/b/a General Dynamics Nassco-Norfolk ("NASSCO") ("Third-Party Complaint"). Dkt. No. 119.

9. On January 29, 2024, AIT moved to dismiss the Third-Party Complaint for failure to state a claim. Dkt. Nos. 124–125.

10. NASSCO also filed a Motion to Dismiss. Dkt. No. 126.

11. The Court ultimately denied AIT and NASSCO's Motions to Dismiss in a Memorandum Opinion dated March 22, 2024. Dkt. No. 139.

12. In denying AIT's Motion to Dismiss, the Court opined that the Third-Party Complaint sufficiently alleged that "AIT breached its duty to Decedent by improperly or negligently performing its tag-out duties on or around January 27-29, 2021." *Id.* at 11.

13. Following the denial of the Motions to Dismiss, the parties have been conducting discovery, including written discovery, numerous depositions, and the exchange of expert disclosures.

14. Plaintiff, given that he is a party with the burden of proof, identified his experts on November 4, 2024, and disclosed their opinions on December 4, 2024, pursuant to the Court's Rule 16(b) Scheduling Order (the "Scheduling Order"). *See* Dkt. No. 146 ¶ 2 ("[T]he party having the burden of proof upon the primary issue to which potential Rule 702, 703 or 705 evidence is directed shall identify expert witnesses to be proffered upon such an issue by name, residence and business address, occupation and field of expertise on November 4, 2024. The disclosure outlined in Rule 26(a)(2)(B) shall be made on December 4, 2024. In addition to the disclosures required by Rule 26(a)(2)(B), the same disclosures shall be made on the same dates regarding all witnesses proffered by a party for the purpose of presenting evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence, whose first direct contact with the case or the parties occurred subsequent to the filing of this action.").

15. The United States, as a Third-Party Plaintiff, was also another party with the burden of proof, and it failed to disclose any experts by the required deadlines in support of the claims for which it has the burden of proof as a Third-Party Plaintiff.

16. Instead of identifying affirmative experts on the primary issue of whether or not AIT is negligent, the United States waited and disclosed experts on the expert response deadline of January 6, 2024.

## II. CLAIMS AGAINST AIT

17. The United States's Third-Party Complaint is the only operative Complaint against AIT.

18. The Third-Party Complaint does not merely adopt Plaintiff's previous claims against AIT, but instead alleges, in pertinent part as it relates to AIT, as follows:

a. AIT requested that the blow-in panel be tagged out in the open position. Dkt. No. 119 ¶ 14.

b. Although NASSCO was responsible for the work on the McFaul, and the ship's force were jointly responsible for tagging out the equipment, "[t]he specific tag-out configuration as compiled, implemented, and confirmed by the crew of the McFAUL, jointly with the repair authority responsible for the work, which in this case was AIT. *Id.* ¶ 15.

c. "[T]he crew of the McFAUL configured the tag out of the blow-in panel in the matter directed by AIT and in accordance with the TUM and the Navy's shipboard procedures applicable to both the equipment and the task to be performed." *Id.* ¶ 17.

d. The tag out configuration was executed by the crew, "subject to review of and approval by the repair authority." *Id.*

e. After the tag out, control of the area was returned to NASSCO and AIT. *Id.* ¶ 18.

f. NASSCO and AIT failed to complete the repair work or "clear" the tag out configuration. *Id.* ¶ 18.

g. Plaintiff's decedent was later injured while leaning her body through the blow-in panel. *Id.* ¶ 23.

19. Based upon the aforementioned facts, the United States claims as follows against AIT:

a. "To the extent that Plaintiff alleges liability for negligence based on alleged 'failure to properly tag-out and secure the blow-in door' . . . AIT was the repair authority jointly responsible for the tag out" and "[a]ny alleged duty to use reasonable care to prevent injuries to ship repairers such as the decedent was shared with AIT and NASSCO. *Id.* ¶ 26.

b. As a direct and proximate result of NASSCO's and AIT's negligence, if judgment is rendered in favor of Plaintiff against the United States of America, the United States may recover over from NASSCO and AIT with respect to any and all fault of Third-Party Defendants NASSCO and AIT." *Id.* ¶ 30.

20. Accordingly, in sum, the only basis for the United States' claim against AIT is that that AIT was somehow negligent in its duties as the Repair Authority and that the negligence caused the injuries and ultimate death of Plaintiff's decedent. *See* Dkt. No. 139 at 9.

21. As outlined in more detail below, such a claim requires expert testimony regarding the duties of AIT, how AIT breached those duties, and whether any such breach caused the subject incident with Plaintiff's decedent.[1]

## III. STATEMENT OF UNDISPUTED FACTS

22. The United States Navy ("Navy") is the owner of the U.S. Naval Vessel USS McFaul. Third-Party Compl. ¶ 10.

---

[1] As outlined above, Plaintiff's operative complaint makes no claims against AIT and fails to allege facts against AIT, leaving the Third-Party Complaint as containing the only facts alleged against AIT.

23. The Navy contracted with Co-Defendant NASSCO as the Prime Contractor to make repairs to the USS McFaul. *Id*. ¶ 11.

24. AIT was one of multiple subcontractors hired by NASSCO to make repairs aboard the USS McFaul, including to a blow-in door for one of the McFaul's gas turbine engines. Am. Compl. ¶¶ 6-8; Third-Party Compl. ¶ 14.

25. Cynthia Gary, decedent, was an employee of another contractor. She was assigned serve as a fire watch on the exterior side of a blow-in door for one of the McFaul's gas turbine engines. *Id*. ¶ 21.

26. On March 15, 2021, Cynthia Gary fatally injured due to an alleged incident involving the blow-in door panel aboard the USS McFaul. *Id*. ¶¶ 27-28.

27. The United States does not allege that AIT was working in the space in or around the blow-in door at the time of Ms. Gary's incident nor does it allege that AIT directed or instructed Ms. Gary's work. *Id*. ¶ 27. Indeed, there is no evidence that AIT had any contact with Ms. Gary relating to her work on the incident date nor that it had knowledge of her presence in and around the blow-in door panel on March 15, 2021.

28. The only duty the United States alleges was owed by AIT as it relates to this case is that of using reasonable care in conducting its tag-out responsibilities. Dkt. No. 139 at 9.

29. Since voluntarily dismissing AIT, Plaintiff has not alleged any new claims or duties owed by AIT. *See generally* Docket.

30. The Plaintiff did disclose affirmative experts, but their causation expert concluded that the United States was at fault[2]:

> **In summary, (1) ship's force should have tagged out the LP air; and (2) ship's force should have known to tag out the LP air for the reasons in the NSWC report dated March 7, 2024.**

Exhibit C at 13.

31. The United States did not disclose any affirmative expert witnesses by the deadline in the Court's Scheduling Order.

## IV. LEGAL STANDARD

Pursuant to Rule 14(c)(1) of the Federal Rules of Civil Procedure permits a defendant to implead a third-party defendant as follows:

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff—for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions.

Fed. R. Civ. P. 14(c)(1).

Rule 14(c) permits a defendant to implead a third-party defendant for two purposes: (1) to seek contribution or indemnification from the third-party defendant, and (2) to tender the third-party defendant to the plaintiff. *See Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 399–400 (5th Cir.2003) (recognizing that Rule 14(c) allows a third-party plaintiff

[2] To be clear, AIT is not trying to litigate the merits of this expert opinion via summary judgment. AIT is merely presenting the factual record before the Court.

either to seek contribution from the third-party defendant directly or to tender the third-party defendants to the plaintiff).

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC,* 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam). To oppose a summary judgment motion by the defendant, the plaintiff must present evidence to show there is a genuine issue of material fact for trial. *Parker v. Geneva Enterprises, Inc.*, 997 F. Supp. 706, 708-09 (E.D. Va. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), aff'd, 139 F.3d 891 (4th Cir. 1998)). The evidence offered by the plaintiff in opposition to a defendant's summary judgment motion must be sufficient to return a verdict at trial for the plaintiff. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See Thompson Everett, Inc. v. National Cable Adv.*, 57 F.3d 1317, 1323 (4th Cir. 1995). The Fourth Circuit has defined expert testimony as testimony that concerns scientific, technical, or other specialized knowledge and that will aid the trier of fact in understanding or resolving a fact at issue. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). And, as discussed *infra*, expert testimony is routinely relied upon in cases involving the U.S. Navy, its ships, and its procedures.

## V. **ARGUMENT**

The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law. *Gauthreaux v. United States*, 712 F. Supp. 2d 458, 464

(E.D. Va. 2010) (Jackson, J.) Accordingly, in order to prove its claim of negligence against AIT for allegedly failing to properly tag-out and secure the blow-in door, the United States must prove a legal duty on the part of the defendant, breach of that duty by conduct that falls below the applicable standard of care, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff. *Id.*; *see also Matter of Bridge Watersports, LLC*, 656 F. Supp. 3d 553 (D. Md. 2023) ("In order to establish a claim of negligence under maritime law, a claimant must show each of the following elements by a preponderance of the evidence: duty breach, causation, and damages.").

**I. Establishing any claim against AIT requires expert opinions.**

As outlined above, a maritime negligence claim requires proof that the defendant had a legal duty and that the breach of that duty falls below the applicable standard of care. *See Gauthreaux*, 712 F. Supp. 2d at 464. In cases in which the duty allegedly breached is the standard of care in a highly technical profession, expert testimony is required to prove liability. *See Benedict v. Hankook Tire Company Limited*, 286 F. Supp. 3d 785, 792-93 (E.D. Va. 2018) (quoting *Beverly Enterprises-Virginia, Inc. v. Nichols*, 247 Va. 264, 267, 441 S.E.2d 1, 3 (1994)) ("The expert testimony rule holds that where the issue of standard of care is "beyond the realm of common knowledge and experience of a lay jury," it is properly the subject of expert testimony.); *Sharpe v. U.S.*, 230 F.R.D. 452, 460 (E.D. Va. 2005) (holding that expert testimony must also "set forth the applicable standard of care."). The court in *Benedict* plainly stated that "the expert testimony rule *demands* that an expert set for *each element of a technical negligence claim*, including the standard of care." 286 F. Supp. 3d 794 (emphasis added). This rule is stringent. *Id.*

The requirement that a plaintiff present expert testimony is applicable to cases which involve alleged violations of safety standards. In *Price v. Carnival Cruise Lines*, the United States District Court for the Southern District of Florida granted summary judgment in favor of the defendant with relation a plaintiff's negligence claims. No. 20-cv-20621-BLOOM/Louis, 2022 WL 2713727, at *1 (S.D. Fla. July 13, 2022). Specifically, the plaintiff alleged that the defendant was negligent in failing to prevent, correct, or warn the plaintiff of a dangerous condition that caused the plaintiff to fall aboard a cruise ship. *Id.* After granting a Daubert motion to exclude plaintiff's expert, the Court evaluated summary judgment. *Id.* at *4–6. In granting summary judgment in favor of defendants, the court noted that "courts have granted summary judgment in favor of defendants when plaintiffs have failed to present any expert testimony that there was a violation of safety standards or a product defect that created a dangerous condition." *Id.* at *7 (citing *McClanahan v. NCL (Bahamas) Ltd.*, 281 F. Supp. 3d 1350, 1354 (S.D. Fla. 2017) (granting summary judgment in favor of a defendant cruise line after the plaintiff presented no expert testimony that the steps in question violated any safety standards); *Penick v. Harbor Freight Tools, USA, Inc.*, No. 19-CV-23134, 2020 WL 6581606, at *5 (S.D. Fla. Nov. 10, 2020) (granting summary judgment, in part, because the plaintiff did not present any expert testimony of a dangerous condition created by a product defect).

What constitutes reasonable care is especially important in a case involving allegations of a lack of action on the part of a defendant. In *Scott v. Carnival Corporation*, a plaintiff alleged, in pertinent part, that the defendant's alleged failure to maintain a ship deck caused the plaintiff's injuries. No. 1:23-cv-21936, 2024 WL 1635904, at *6 (S.D. Fla. March 12, 2024). In granting summary judgment in favor of the defendant, the court noted that while the plaintiff stated that "the only record evidence is that the pool overflowed, Carnival employees were in the area, and

failed to cordon off the area which are its maintenance procedures," the evidence was insufficient to establish that the defendant's maintenance of the subject deck was negligent because there was no record evidence showing that Defendant acted unreasonably with respect to any need to remedy or maintain the subject deck area. *Id.*

Here, the United States purports that "AIT was the repair authority jointly responsible for the tag-out," and "[a]ny alleged duty to use reasonable care to prevent injuries to ship repairers such as the decedent was shared with AIT and NASSCO." Third-Party Compl. ¶ 26. Although an average lay person may have thoughts on who should be responsible, expert opinion is required for a lay person to decide whether there was a legal duty and whether that duty was breached.

In order to prove its case against AIT, the Plaintiff or the United States must present affirmative expert opinions with relation to the standard of care that they allege AIT violated. The issues in this case involve systems and processes of the United States Navy, none of which are in the realm of common knowledge and experience of a lay jury. More specifically, an expert would need to establish a standard of care pursuant to the Navy's own tag-out system which involves complex issues of ownership, concurrent jurisdiction between the Navy's personnel, the prime contractor, and the subcontractor, and the architecture of the blow-in door's hydraulic system. Any one of these topics alone is sufficient to trigger the expert testimony rule, let alone the multi-layered issues present.

## II. To the extent, Plaintiff's Expert Disclosures are directed toward claims against AIT, they are insufficient to support a claim.

Despite being given a chance to prove its theory of the case and go beyond what the Court had previously identified as "speculative breaches" in the Amended Complaint, the Plaintiff has failed to identify any expert opinions to support the claims for which he has the burden of proof, and the deadline for such opinions has long passed. The Plaintiff cannot meet its

burden of proof without an expert witness and therefore fails to meet an essential element of its claim for negligence.

Plaintiff identified two expert witnesses related to damages claims and one expert witness regarding liability in this case. (Exhibit C and D, Mr. Rudolf's affirmative and rebuttal reports.) Given that this Motion for Summary Judgment is based upon the failure to identify an expert witness regarding the allegations in the Third-Party Complaint, including AIT's alleged duty of "reasonable care", breach of that duty, and causation of any issues related to the blow-in panel, the liability expert is the only expert of any potential relevance here. *See* Dkt. No. 119, ¶ 26. The liability witness is Chester D. Rudolf III, P.E.

Mr. Rudolf summarizes his own opinions as follows: "(1) ship's force should have tagged out the LP air; and (2) ship's force should have known to tag out the LP air for the reasons in the NSWC report dated March 7, 2024." (Exhibit C, Rudolf's Report, at 9.[3]) His summary of opinions makes no reference to AIT whatsoever. Although Mr. Rudolf's report makes mention of actions that Mr. Rudolf believes that AIT should have taken, he does not provide any opinions regarding the standard for the "reasonable care" that AIT should have taken that would constitute their legal duty, nor does he state how any such breach caused the incident. Mr. Rudolf's opinion makes clear that it was the ship's force that should have tagged out the low-pressure (LP) air, and it was ship's force that should have known to tag out the LP Air.

[3] Mr. Rudolf appears to use the term "ship's force" to refer exclusively to the members of the United States' Navy aboard the vessel and that would be the plain meaning of the phrasing.

Given that Mr. Rudolf makes no opinions that could support a legal duty on the part of AIT or a breach of that duty causing the subject incident, there are no opinions to rely on that overcome a Motion for Summary judgment in favor of AIT.

**III. Although Rule 14(c) appears to permit the United States to also prove a case against AIT, the United States did not disclose any affirmative expert opinions and only issued opinions responsive to Plaintiff's expert opinions, which is fatal to its case.**

The 14(c) tender makes this case unusual, especially because the United States's 14(c) tender has the only surviving allegations and alleged duty owed by AIT. Rule 14(c) permits a defendant to implead a third-party defendant for two purposes: (1) to seek contribution or indemnification from the third-party defendant, and (2) to tender the third-party defendant to the plaintiff. *See Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 399–400 (5th Cir.2003) (recognizing that Rule 14(c) allows a third-party plaintiff either to seek contribution from the third-party defendant directly or to tender the third-party defendants to the plaintiff).

Despite the United States' tender of AIT to the Plaintiff, the Plaintiff has not asserted claims against AIT, has not pursued expert opinions against AIT, and has not presented a triable issue of negligence against AIT. The United States has no separate causes of action against AIT so if Plaintiff is not pursuing AIT's negligence that should dispose of the matter. But, even assuming *arguendo* that in the absence of Plaintiff pursuing AIT's negligence that such burden falls to the United States, the United States failed to offer any affirmative expert opinions to support a finding that AIT was negligent.

The Court's Scheduling Order is clear that "the party having the burden of proof upon the primary issue" shall identify experts by November 4, 2024, and produce expert reports by December 4, 2024. Dkt. No. 146 ¶ 2. The deadline for "Rule 702, 703 or 705 disclosures intended solely to respond to, contradict or rebut evidence on the same subject matter disclosed

by another party pursuant to paragraph (a)(2)(B) of Rule 26 or pursuant to [the Rule 16(b) Scheduling Order]" was January 6, 2025. *Id.* ¶ 2.

The United States issued two sets of expert disclosures on January 6, 2025. The first is titled "Defendant and Third-Party Plaintiff United States' Rule 26(a)(2)(B) Disclosure of Expert Testimony" and discloses the opinions of Dr. James Koch and Gregory J. Paulsen, P.E. (See Exhibit A.) The second set is titled "Defendant and Third-Party Plaintiff United States' Rule 26(a)(2)(C) Disclosure of Non-Retained Expert Testimony" and discloses the opinions of GSCM (SW) Gregory M. Mann, U.S. Navy. (Exhibit B.)

The United States' rebuttal disclosures should not be permitted as opinions on the primary issue of AIT's alleged negligence given their late disclosure and the United States's apparent intention that they not be used to support an affirmative claim against AIT. The United States had ample time to disclose affirmative experts against AIT and chose not to do so. To allow any claim to proceed based upon such opinions would be contrary to the Federal Rules of Civil Procedure and the Court's Scheduling Order, would create confusion regarding which opinions relate to which claims, and would only serve to foster trial by ambush.

## IV. Neither the Plaintiff nor the United States can establish a claim against AIT because they cannot prove causation.

"The plaintiff has the burden of proof of negligence, proximate cause and injury by a preponderance of the evidence." *Gauthreaux*, 712 F. Supp. 2d at 464. "Causation in maritime law, as in general tort law, requires the party alleging negligence to demonstrate both factual and proximate causation." *Bonita Properties, LLC v. C & C Marine Maintenance Company*, No. 2:12cv247, 2016 WL 10520137, at *4 (W.D. Pa. 2016) (citing *Galentine v. Estate of Stekervetz*, 273 F. Supp. 2d 538, 548 (D. Del. 2003)). "Factual causation involves an inquiry into whether the event would have occurred in the absence of an act or omission." *Id.* (quoting *Galentine*, 273

F. Supp. 2d at 548). "Proximate causation involves an inquiry into whether the damage was a reasonably foreseeable consequence." *Id.* (quoting *Galentine*, 273 F. Supp. 2d at 548).

"Negligence is the proximate cause only when without such negligence the injury would not have occurred or could not have been avoided." *Gauthreaux*, 712 F. Supp. 2d at 464. "In essence, the plaintiff must prove that the 'defendant's breach of duty was more likely than not (i.e. probably) the cause of the injury.'" *Id.* (quoting *Hurley v. United States*, 923 F.2d 1091, 1094 (4th Cir. 1991)). "The negligence must be a 'substantial factor' in causing the injury, defined as 'something more than "but for" causation.'" *Gauthreaux*, 712 F. Supp. 2d at 464 (quoting *Thomas v. Express Boca Co.*, 759 F.2d 444, 448 (5th Cir. 1985)). "Negligence 'cannot be presumed from the mere happening of an accident.'" *Id.* (quoting *Jones v. United States*, 342 F. Supp. 392, 398 (E.D. Va. 1972); *Weddle v. Draper*, 204 Va. 319 (1963)). "It cannot be left to conjecture, guess or speculation." *Id.*

No expert opinions or facts have been identified that support a finding that any action of AIT caused injury to the Plaintiff's decedent. Even the expert opinions improperly identified by the United States, fail to make any specific causation opinions with relation to AIT other than conclusory allegations. The only factual allegations identified in discovery by the United States to support their claim that AIT caused the incident are allegations that AIT failed to complete the repair or clear the tag until such time that they were ready to complete the repair. (*See* Exhibit E, Plaintiff's Answer's to AIT Discovery Requests, at 3.) Even if true, which AIT disputes, there is no evidence that such alleged omissions on the part of AIT were the proximate cause of the incident nor can there be.

It is not sufficient for a party to point to alleged omissions when such alleged omissions lack causal connection to the incident at the subject of the dispute. *See e.g., Commonwealth v.*

*Burton*, No. 2:11cv601, 2012 WL 2785900, at *5 (E.D. Va. July 6, 2012) (recognizing that a "[v]iolation of a statute alone does not warrant a finding that the violation itself was the proximate cause of a collision or allision or the damages"); *In re Complaint of Vulcan Materials Company*, 674 F. Supp. 2d 756, 762 (E.D. Va. 2009) ("[P]roximate cause is defined as 'that cause which in a direct, unbroken sequence produces the injury complained of and without which such injury would not have happened.").

Here, there is no evidence to prove essential elements of the case against AIT. All that exists in this case is mere speculation, which cannot support a claim. AIT should be fully and finally dismissed from this case with prejudice. The Plaintiff and the United States have had ample time to conduct discovery and present expert witnesses to support a claim against AIT and they have failed to do so. Summary judgment is appropriate.

## CONCLUSION

For the reasons set forth herein, Advanced Integrated Technologies, LLC respectfully prays that this Honorable Court grant its motion and enter summary judgment in its favor, dismiss it fully from the case with prejudice as to all claims, and for any other relief that the Court deems appropriate.

Dated: January 24, 2025

ADVANCED INTEGRATED TECHNOLOGIES, LLC

*/s/ Jennifer L. Eaton*

Jennifer L. Eaton (VSB No. 87491)
Katherine M. Lennon Ellis (VSB No. 92358)
WOODS ROGERS VANDEVENTER BLACK PLC
101 West Main St. Suite 500
Norfolk, Virginia, 23510
757-446-8600 (Telephone)
757-446-8670 (Fax)
Jennifer.Eaton@woodsrogers.com
Kate.Lennon@woodsrogers.com