IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DOUGLAS I. HORNSBY, Administrator
of the Estate of CYNTHIA GARY,

    Plaintiff,

v.                                                                                    CASE NO. 2:22-cv-427

UNITED STATES OF AMERICA,

    Defendant and Third-Party Plaintiff,

v.

METRO MACHINE CORP., d/b/a
GENERAL DYNAMICS NASSCO - Norfolk,

and

ADVANCED INTEGRATED TECHNOLOGIES, LLC,

    Third Party Defendants.

PLAINTIFF'S DISCLOSURE
OF REBUTTAL EXPERT TESTIMONY

    COMES NOW the Plaintiff, by counsel, and for his disclosure of expert testimony in rebuttal to Defendants' experts, states as follows:

CHESTER D. RUDOLF, III, P.E.
3100 SHORE DRIVE, APT. 953
VIRGINIA BEACH, VA 23451

    Mr. Rudolf will testify in accordance with the attached supplemental reports dated January 21, 2025.

Exhibit D

                              **DOUGLAS I. HORNSBY, Administrator**
                              of the Estate of **CYNTHIA GARY**

                        By _____/s/_____
                                     Of Counsel

Robert J. Haddad, Esq. (VSB No. 22298)
Andrew M. Hendrick, Esq. (VSB #42852)
**RULOFF, SWAIN, HADDAD, MORECOCK,**
   **TALBERT & WOODWARD, P.C.**
317 30th Street
Virginia Beach, VA 23451
P: (757)671-6000
F: (757)671-6004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was transmitted electronically and mailed, first-class, postage prepaid, this 21st day of January, 2025 to the following:

Malinda R. Lawrence, Esq.
United States Department of Justice
Civil Division, Torts Branch
Aviation, Space & Admiralty Litigation
175 N Street, NE, 8th Floor
Washington, DC 20002
Malinda.R.Lawrence@usdoj.gov
*Counsel for United States*

Garry D. Hartlieb, Esq.
Assistant United States Attorney
Office of the United States Attorney
101 West Main Street, Suite 8000
Norfolk, VA 23510-1671
garry.hartlieb@usdoj.gov
*Counsel for United States*

Lynn K. Brugh, IV, Esq.
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, VA 23219
lbrugh@williamsmullen.com
jirvin@williamsmullen.com
*Counsel for Metro Machine Corp. d/b/a General Dynamics NASSCO-Norfolk*

Jennifer L. Eaton, Esq.
Woods Rogers Vandeventer Black PLC
101 West Main Street, Suite 500
Norfolk, VA 23510
Jennifer.Eaton@wrvblaw.com
*Counsel for Advanced Integrated Technologies, LLC*

_____
Andrew M. Hendrick, Esq.

Page 3 of 3

Exhibit D

Response to Statement by GSCM Mann re Rudolf Report

Throughout the report my name was misspelled. It should read Rudolf not Rudolph.

1. Agree that sailors are trained to apply the principles in the Naval Sea Systems Command Tag-Out User's Manual ("TUM"), and to follow applicable Navy procedures, including Navy Planned Maintenance System ("PMS") procedures, however as mentioned in my report these directives require that all associated systems are to be de-energized prior to tag-out. This was not the case prior to the accident therefore the tag-out was not properly executed. Furthermore, good engineering practices of adhering to de-energization were not applied.
2. His verbiage supports my premise that the use of the BID for maintenance equipment or services was contrary to the prohibitions mentioned in the BID tech manual and that NavSea needed to be more proactive in accomplishing this modification to ships of the class.
3. My observation is accurate. The Tag-out manual in paragraphs 1.3 specifically states a joint responsibility.
4. I agree.
5. The documentation referred to showed that the if the solenoid actuator had air pressure applied that the door could not be manually moved but that if air pressure was secured the door could be easily moved manually as testified by GSCS Goff in his deposition.
6. To clarify this, I mentioned that the BID control switch in its configuration at the time of the accident could be turned without first depressing the switch. This was verified in the OSHA report and the deposition of GSCS Goff.
7. I agree that the block had not been signed. I do not agree that this is justified regardless of the circumstances.
8. Regardless of when the BID was tagged out either for gasket replacement or uptake hot work, it was not accomplished in accordance with the Tag-out manual and other directives.
9. I agree.
10. My engineering opinion, based on the documentation available, is that if air pressure had been removed from the system that the door would have remained in the position that it was in when the air was de-energized.
11. My original understanding of the system design was a double - acting solenoid valve per door that functions both as a door closing and opening actuator, I have consulted the BID Tech manual and have revised my simplified figure 4. of my report to include two solenoid actuators (See below).



Exhibit D

Nevertheless, this change in no way reflects my position that if the cylinder were activated with air pressure to open the door and subsequently the air pressure were secured the door would remain in the open position until it was manually closed (manual closing of the door would present no hazard to maintenance services (unless it was forced) or to personnel). Plus, it would satisfy the recommendation of the WAF to tagout the door in the open position. Leaving LP air on the system presented a hazard to both maintenance services and personnel.

GSMC Mann attempts to justify that leaving air pressure applied to the system would not only keep the door open but satisfy the Waf Request. It does nothing to eliminate the hazard of inadvertent door closing under pressure.

12. I stand by my assessment that GSCS Goff was the only ship's force person who testified that claimed to know the design aspects of opening and closing the door with controls or manually.
13. GGTB 28 specifically warns that to prevent personnel injury, low pressure air must be isolated and tagged out prior to cleaning and lubricating the BID"
14. Mr. Bowman testified that the procedures Mann discusses in the Navsea Advisories were in effect prior to the advisory issued in March 2024.
15. I merely intended that both GSCS Goff and the Chief Engineer circumvented good engineering practices which included knowledge of hazardous situations existing on their equipment

January 21, 2025

Exhibit D

## Rudolf Response to 3D Marine USA Expert Report of 5 January 2025

My name is misspelled a number of times. It should be Rudolf, not Rudolph.

10.8. Tagout Manual para 1.1.3b specifically states inter alia that the RA shall ensure that enough tags are are used to completely isolate the system to prevent operation from all stations that could exercise control. Approved system diagrams or circuit schematics shall be used by the RA to determine the adequacy of the tagout. I can see no evidence that this was accomplished by the RA submitting the WAF.

10.17. AIT may not have overridden the Ship's proposed tag-out, however that may have not been necessary if the circuit diagram and operation had been discussed between RA and Ships Force as part of the tagout as specified by the Tag-Out Manual.

10.19. I never mentioned that AIT was responsible for setting up and briefing the fire watch. Neve-the-less it should have been the responsibility of a NASSCO subcontractor, not ship's force.

10.20. AIT had to have experience from performing the gasket replacement on other ships of the class so they should have had some corporate knowledge of the hazards associated with the job which could have been discussed with ships force prior to tagging. There was no evidence of this in the documents or depositions.

## Response to CDC Technologies Expert Report of 3 January 2025

Item 5. There is no evidence from the documentation that tag-out verification included a review of circuit diagrams or schematics with Ship's Force as specified in the TUM.

*[signature]*

January 21, 2025

Exhibit D