IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **DOUGLAS I. HORNSBY, Administrator** ) <br> of the Estate of **CYNTHIA GARY,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v.  ) <br> ) <br> **UNITED STATES of AMERICA,** ) <br> ) <br> **Defendant/Third-Party Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **METRO MACHINE CORP., d/b/a** ) <br> **GENERAL DYNAMICS NASSCO-NORFOLK, et al.** ) <br> ) <br> **Third-Party Defendants**. ) | Case No. 2:22-cv-427 |

**DEFENDANT METRO MACHINE CORP.'S MEMORANDUM IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Third-Party Defendant Metro Machine Corp., d/b/a General Dynamics NASSCO-Norfolk ("NASSCO-Norfolk"), by counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56, files this Memorandum in Support of its Motion for Summary Judgment.

### I.   INTRODUCTION

Plaintiff and the United States have failed to identify any expert witnesses to support any affirmative claims against NASSCO-Norfolk. Under the expert testimony rule, cases such as this require expert testimony regarding the standard of care and how that said standard of care has been breached. Thus, this failure is fatal to the Amended Complaint and Third-Party Complaint. Moreover, even if this failure was not fatal, the United States' theory of liability against NASSCO-Norfolk is wholly dependent on vicarious liability for the actions or omissions

of subcontractors. However, NASSCO-Norfolk did not exert the degree of control necessary to establish vicarious liability. Therefore, the Court should grant NASSCO-Norfolk's Motion for Summary Judgment and dismiss NASSCO-Norfolk from this case.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. USS McFaul Repair Activity

In March 2021, the USS McFaul, a U.S. Navy Destroyer, was undergoing maintenance and repairs at NASSCO-Norfolk's shipyard. (Am. Compl. ¶ 19, ECF No. 21.) NASSCO-Norfolk was the prime contractor for the maintenance and repairs. (3d Party Compl. ¶ 11, ECF No. 119.) NASSCO-Norfolk contracted with Advanced Integrated Technologies, LLC ("AIT") and Coastal Mechanical Systems, LLC ("CMS"), who in turn contracted with Harbor Industrial Services, Inc. ("HIS"), for portions of the maintenance and repair work. (Am. Compl. ¶¶ 7-8, 20.)[1] Cynthia Gary ("Ms. Gary") was an employee of Blue Staffing Agency and was assigned to work for HIS aboard the USS McFaul. (*Id.* ¶¶ 18-19; Affidavit of Yeidy Cordero ¶¶ 13-14, 28-29, ECF No. 83-1; Affidavit of Rolando Fajardo ¶¶ 13, 34, ECF No. 83-2.)

### B. WAF and Tag-Out Processes

Repair and maintenance activities on the USS McFaul were coordinated and authorized using Work Authorization Forms ("WAFs"). First, the Repair Activity Representative, an employee of the contractor or subcontractor performing the specific repair work, fills out a WAF noting the ship; the system being worked on; the company performing the work; the technical work document related to the work; a description of the work; the location of the work; any post work testing; restrictions, precautions, or remarks; and the name of the Repair Activity

---

[1] KD Shipyards, LLC ("KDSR"), was also a subcontractor for the repair activity and is alleged to have been under a contract to work on the switchboard that contained the blow-in door's rotary switch. (Am. Compl. ¶¶ 9, 23.) KDSR and CMS were both dismissed with prejudice after the Court adopted the Report and Recommendation. (ECF Nos. 93, 111.)

2

Representative. (Helms Dep. Tr. 51:10-16;[2] Helms Dep. Ex. 2[3] § 3.1.4.2; Buie Dep. Tr.[4] 107:14-24.) After completing the relevant fields, the Repair Activity Representative submits the WAF to the WAF Coordinator, a NASSCO agent, who would review the WAF to insure it was properly filled out and assign it a serial number. (Helms Dep. Tr. 41:20-25; 43:6-19; Helms Dep. Ex. 2 § 3.1.4.2; Buie Dep. Tr. 107:14-24.) The WAF Coordinator then transmits the WAF to the Engineering Duty Officer, a Navy employee, who reviews the WAF to determine if the work can proceed, whether a tag-out is needed, and the specific conditions for the tag-out. (Helms Dep. Tr. 42:9-15; Helms Dep. Ex. 2 § 3.1.4.3; Buie Dep. Tr. 107:25-108:9.)

The purpose of a tag-out is to isolate components of ship equipment to ensure that individuals performing repairs are not harmed by improper operation of said equipment. (Preetam Dep. Ex. 13[5] § 1.1.) In determining what components need to be tagged out, the Navy uses Planned Maintenance System Cards ("PMS Cards"). (Preetam Dep. Tr.[6] 24:4-12.) If a tag-out is necessary, the "First Person" or Petty Officer in Charge, a Navy employee, "builds the tag" by determining which components need a tag in order to complete the repair activity and creates a line item for each tag. (Preetam Dep. Tr. 31: 25-32:8; 33:22-24; Preetam Dep. Ex. 13 §§ 1.6(a), 1.6.1(a)-(g); Buie Dep. Tr. 108:7-9, 108:21-109:5, 192:11-14.) Afterwhich, the "Second Person," a Navy employee, independently determines the adequacy and accuracy of the line items and tags. (Preetam Dep. Tr. 34:1-3; Preetam Dep. Ex. 13 § 1.6.2(a)-(b); Buie Dep. Tr. 109:4-11.) The "Authorizing Officer," a Navy employee, then reviews the line items and tags for adequacy of tag-out coverage. (Preetam Dep. Ex. 13 § 1.6.3(a); Buie Dep. Tr. 109:12-16.) Then, if the work

---

[2] A true and accurate copy of excerpts from Mr. Helms' deposition is attached as **Exhibit A**.
[3] A true and accurate copy of Exhibit 2 from Mr. Helms' deposition is attached as **Exhibit B**.
[4] A true and accurate copy of excerpts from Mr. Buie's deposition is attached as **Exhibit C**.
[5] A true and accurate abridged copy (appendices removed) of Exhibit 13 from Ms. Preetam's deposition is attached as **Exhibit D**.
[6] A true and accurate copy of excerpts from Ms. Preetam's deposition is attached as **Exhibit E**.

is being performed by a contractor or subcontractor, the Repair Activity Representative conducts his or her own review. (Preetam Dep. Tr. 34:4-13; Preetam Dep. Ex. 13 § 1.6.3(b); Buie Dep. Tr. 109:6-20.) The Authorizing Officer then "issues" the tags and authorizes them to be hung. (Preetam Dep. Tr. 34:11-21.) After the tags have been issued, the First Person goes to the equipment, hangs the tags, and signs the tags. (*Id.* 34:22-35:2.) Next, the Second Person goes to the equipment, verifies that the tags have been hung correctly, and signs the tags. (*Id.* 35:2-5.) The Repair Activity Representative either goes with the Second Person or goes independently to verify and sign the tags. (*Id.* 35:6-11.) Notably, the Navy employees do the physical attaching of the tags, and the Navy has complete ownership over the equipment. (Buckley Dep. Tr.[7] 75:15-17, 76:12-77:1; 96:10-97:16.) Contractors are not permitted to even touch any of the components or reposition any of the equipment. (Buckley Dep. Tr. 75:18-22.) The Authorizing Officer then marks the tags as hung in the ship's computer system, eSOMs. (Preetam Dep. Tr. 35:12-19.)

After the tag-out process, the WAF Coordinator signs the WAF concurring that the work can start. (Helms Dep. Ex. 2 § 3.1.4.3.) The Engineering Duty Officer and Repair Activity Representative then sign the WAF as well. (Helms Dep. Ex. 2 § 3.1.4.4.) The WAF Coordinator then issues a copy of the authorized WAF indicating to the Repair Activity Representative that work can begin. (Helms Dep. Ex. 2 § 3.1.4.5.) Once the work and any post-work testing is completed, the Repair Activity Representative signs the WAF and returns it to the WAF Coordinator. (Helms Dep. Ex. 2 § 3.1.4.6.) The WAF Coordinator signs the WAF after verifying that the WAF had been signed by the Repair Activity and provides the WAF to the Watch or

---

[7] A true and accurate copy of excerpts from Mr. Buckley's deposition is attached as **Exhibit F**. Mr. Buckley was an area manager for NASSCO-Norfolk at the time of the incident. (Buckley Dep. Tr.11:1-5.) As area manager, Mr. Buckley was assigned certain work items and tasked with ensuring the progressed. (*Id.* 23:22-24:24.)

Duty Officer. (Helms Dep. Ex. 2 § 3.1.4.6.). Once the Watch or Duty Officer signs the WAF, the WAF is officially closed. (*Id.*)

### C. Events Preceding March 15

On January 29, 2021, AIT requested and was issued WAF No. 0271 for the removal and replacement of the gasket on the blow-in door in compartment 01-260-1-Q and requested that the blow-in door be tagged out in the open position to perform the work. A true and accurate copy of WAF No. 0271 is attached as **Exhibit G**. GSM3 Christopher Crespo served as the First Person, GSM3 Austin Roberts served as the Second Person, and GSM1 Anita Preetam served as the Authorizing Officer. Ex. G. AIT's agent, Kelvin Buie, served as the Repair Activity Representative. (Ex. G.) During the tag-out, GSM1 Preetam determined that the blow-in door needed to remain energized and pressurized to ensure that the blow-in door stayed in the open position. (Preetam Dep. Tr. 62:21-23.)

CMS was issued a hot work permit to "remove and install deck and inserts" on March 15, 2021. A true and accurate copy of the hot work permit has been attached as **Exhibit H**. The hot work form was submitted by CMS to the Navy which authorized the hot work, not NASSCO-Norfolk. (Buckley Dep. Tr. 55:2-20.) As a subcontractor to CMS, HIS performed the hot work and was responsible for having a fire watch. Ms. Gary was assigned to serve as "fire watch"[8] by HIS, her employer, for this hot work. (Affidavit of Yeidy Cordero ¶¶ 14, 28, ECF No. 83-1; Affidavit of Rolando Fajardo ¶¶ 33-34, ECF No. 83-2.) Ms. Gary was positioned by HIS and either repositioned herself or was instructed to reposition herself through the blow-in door. (Affidavit of Yeidy Cordero ¶ 32, ECF No. 83-1; Affidavit of Rolando Fajardo ¶ 33, ECF No. 83-2.)

---

[8] An individual performing "fire watch" monitors "hot work" to ensure that the hot work does not spark inadvertent fires.

### D. Expert Discovery

Plaintiff asserted two claims against NASSCO-Norfolk in the Amended Complaint. (Am. Compl. ¶¶ 46-49, 70-71.) On October 6, 2023, NASSCO-Norfolk filed a Motion for Judgment on the Pleadings. (ECF No. 94.) On October 27, 2023, the Court entered a Consent Order granting the Motion for Judgment on the Pleadings and dismissed the claims against NASSCO-Norfolk. (ECF No. 98.)

On January 9, 2024, the United States filed a Third-Party Complaint and Rule 14(c) Tender (the "Third-Party Complaint") adding NASSCO-Norfolk back into the case. (3d Party Compl., ECF No. 199.) The Third-Party Complaint did not assert any claims against NASSCO-Norfolk, and, despite being tendered to the Plaintiff, the Plaintiff did not reassert any claims against NASSCO-Norfolk. Thus, under the operative complaints, there are no direct claims against NASSCO-Norfolk.

The United States has not alleged any claims against NASSCO-Norfolk directly nor has it alleged any specific duties owed by NASSCO-Norfolk. (*See* docket generally.) Pursuant to the Court's Scheduling Order:

> The party having the burden of proof upon the primary issue to which potential Rule 702, 703 or 705 evidence is directed shall identify expert witnesses to be proffered upon such an issue . . . on **November 4, 2024**. The disclosure outlined in Rule 26(a)(2)(B) shall be made on **December 4, 2024**. Rule 702, 703 or 705 disclosures intended solely to respond to, contradict or rebut evidence on the same subject matter disclosed by another party pursuant to paragraph (a)(2)(B) of Rule 26, or pursuant to this order, shall be made on **January 6, 2025**.

(Scheduling Order § 2, ECF No. 146 (emphasis in original).)

On November 4, 2024, the Plaintiff disclosed its expert witnesses. On December 4, 2024, Plaintiff disclosed its expert reports and expected testimony, which concluded that the United States was at fault. The United States did not issue any expert disclosures on November 4, 2024 or December 4, 2024. Instead, the United States issued its expert disclosures on January

6, 2025.

## III. LEGAL STANDARD

A third-party defendant may file a motion for summary judgment regardless of whether the operative complaint directly states a claim against the third-party defendant. *See Burns v. Cel-Mar Mfg., Inc.*, 1982 WL 195681 (W.D. Wash. Nov. 15, 1982). Rule 56 of the Federal Rules of Civil Procedure requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is considered "material" if it "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a disputed material fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. Although all reasonable inferences are to be drawn in favor of the non-moving party, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (emphasis added).

## IV. ARGUMENT

### A. Neither Plaintiff nor the United States Can Establish a Claim Against NASSCO-Norfolk.

#### i. Establishing Liability Against NASSCO-Norfolk Requires Expert Testimony.

A maritime negligence claim requires proof that the defendant had a legal duty and, that by failing to adhere to the applicable standard of care, the defendant breached that duty. *See Gauthreaux v. United States*, 712 F. Supp. 2d 458, 464 (E.D. Va. 2010). When the duty relates to a highly technical profession, expert testimony is required "to establish the standard of care by

7

which to measure [the defendant's] conduct." *Benedict v. Hankook Tire Co. Ltd.*, 286 F.Supp.3d 785, 790-92 (E.D. Va. 2018). In fact, "an expert [must] set forth each element of a technical negligence claim" not just the standard of care. *Id.* at 794.

The expert testimony rule applies to cases involving violations of safety standards. *See, e.g., Price v. Carnical Cruise Lines*, 2022 WL 2713727, at *7 (S.D. Fla. July 13, 2022) (noting "courts have granted summary judgment in favor of defendants when plaintiffs have failed to present any expert testimony that there was a violation of safety standards or a product defect that created a dangerous condition"). Further, the expert testimony rule is particularly important in cases in which negligence is premised on lack of action. *See Scott v. Carnival Corp.*, 2024 WL 1635904, at *6 (S.D. Fla. Mar. 12, 2024).

The United States contends that "[a]ny alleged duty to use reasonable care to prevent injuries to ship repairers such as the decedent was shared with AIT and NASSCO" and "[a]ny alleged duty to prevent injury to longshoremen in performance of the ship repair work for which NASSCO was responsible, belonged to NASSCO." (3d Party Compl. ¶¶ 26-27.) To prove its case, Plaintiff or the United States must present affirmative expert testimony establishing the standard of care that they allege that NASSCO-Norfolk breached.

> **ii. Plaintiff's Expert Disclosures are Not Directed Towards NASSCO-Norfolk and are Insufficient.**

Plaintiff has failed to identify any expert opinions regarding the applicable standard of care. Plaintiff identified two damages experts and one liability expert. A true and accurate copy of the expert disclosure and report of Plaintiff's liability expert, Chester D. Rudolf, III, is attached as **Exhibit I**. The liability expert, Mr. Rudolf, summarized his opinions as such: "(1) ship's force should have tagged out the LP air; and (2) ship's force should have known to tag-out the LP air for the reasons in the NSWC report dated March 7, 2024." (Ex. I at 13.) While the

8

expert report alleges failures on behalf of the Navy—such as GSM1 Preetam's decision to keep the blow-in door energized— as well as failures on behalf of some of the subcontractor Repair Activity Representatives, it did not allege any failure on behalf of NASSCO-Norfolk. (Ex. I at 12.)  Further, the report is silent on the applicable standard of care or legal duty.

### iii. The United States did Not Disclose Any Affirmative Experts Opinion and Only Issued Rebuttal Expert Opinions.

The procedural posture of this case is unusual.  The United States brought NASSCO-Norfolk back into this case through a Rule 14(c) tender.  Under Rule 14(c), a defendant may interplead a third-party defendant for two purposes: (1) to seek contribution or indemnification and (2) to tender the third-party defendant to the plaintiff. *See Tex. A&M Research Found. V. Magna Transp., Inc.*, 338 F.3d 394, 399-400 (5th Cir. 2003).

As previously discussed, Plaintiff's claims against NASSCO-Norfolk were dismissed and the Third-Party Complaint did not assert any direct claims against NASSCO-Norfolk.  Plaintiff has not pursued expert opinions against NASSCO-Norfolk and has not presented a triable case against NASSCO-Norfolk. Nor has the United States presented any affirmative expert opinions to support a finding that NASSCO-Norfolk was negligent.

The Court's Scheduling Order is clear that "the party having the burden of proof upon the primary issue" shall identify experts by November 4, 2024 and produce expert reports by December 4, 2024. (Scheduling Order § 2.)  The Scheduling Order is also clear that "disclosures intended *solely* to respond to, contradict or rebut evidence" must be made by January 6, 2025. (*Id.* (emphasis added).)  The United States issued two sets of expert disclosures on January 6, disclosing one damages expert and two liability experts.  A true and accurate copies of the designation and reports of the liability experts Gregory J. Paulsen, P.E., and Gregory M. Mann are attached as **Exhibit J** and **Exhibit K**, respectively. These rebuttal disclosures should not be

permitted as opinions on the primary issue of NASSCO-Norfolk's negligence given their late disclosure and the Court's instruction that experts disclosures occurring on January 4 be used solely to respond to, contradict, or rebut affirmative experts.

### iv. Neither the Plaintiff nor the United States Can Establish a Claim Against NASSCO-Norfolk Because They Cannot Prove Causation.

"The plaintiff has the burden of proof of negligence, proximate cause and injury by a preponderance of the evidence." *Gauthreaux*, 712 F. Supp. 2d at 464. "Causation in maritime law, as in general tort law, requires the party alleging negligence to demonstrate both factual and proximate causation." *Bonita Properties, LLC v. C & C Marine Maintenance Co.*, 2016 WL 10520137, at *4 (W.D. Pa. 2016) (citing *Galentine v. Estate of Stekervetz*, 273 F. Supp. 2d 538, 548 (D. Del. 2003)). "Factual causation involves an inquiry into whether the event would have occurred in the absence of an act or omission." *Id.* (quoting *Galentine*, 273 F. Supp. 2d at 548). "Proximate causation involves an inquiry into whether the damage was a reasonably foreseeable consequence." *Id.* (quoting *Galentine*, 273 F. Supp. 2d at 548).

"Negligence is the proximate cause only when without such negligence the injury would not have occurred or could not have been avoided." *Gauthreaux*, 712 F. Supp. 2d at 464. "In essence, the plaintiff must prove that the 'defendant's breach of duty was more likely than not (i.e. probably) the cause of the injury.'" *Id.* (quoting *Hurley v. United States*, 923 F.2d 1091, 1094 (4th Cir. 1991)). "The negligence must be a 'substantial factor' in causing the injury, defined as 'something more than "but for" causation.'" *Gauthreaux*, 712 F. Supp. 2d at 464 (quoting *Thomas v. Express Boca Co.*, 759 F.2d 444, 448 (5th Cir. 1985)). "Negligence 'cannot be presumed from the mere happening of an accident.'" *Id.* (quoting *Jones v. United States*, 342 F. Supp. 392, 398 (E.D. Va. 1972); *Weddle v. Draper*, 204 Va. 319 (1963)). "It cannot be left to conjecture, guess or speculation." *Id.*

No expert opinions or facts have been identified that support a finding that any action or omission of NASSCO-Norfolk caused injury to Ms. Gary. The only opinions, in the untimely disclosed expert opinions of the United States (which should not be considered), related to NASSCO-Norfolk are conclusory allegations. The only allegation against NASSCO-Norfolk is from the United States' expert, Mr. Paulsen, in which he stated:

> The tag out had been requested, verified and hung to meet the AIT WAF almost three months prior to Ms. Gary's accident. Had NASSCO cancelled the WAF due to noncompletion after issue, the tag out would have been cleared, the BID been closed, and Ms. Gary would not have attempted to use the BID opening as a fire watch access.

(Ex. J at 15-16). First, Mr. Paulsen states that the tag was open for three months, when in actuality it was six weeks.[9] (*See* Ex. G.) Second, Mr. Paulsen merely states that there was "but for" causation. He does not state that it was negligent or improper to leave the tag-out open nor does it provide support for proximate cause. In fact, multiple witnesses, including a Navy witness, have testified that this was not an usual amount of time. (Goff Dep. Tr.[10] 41:11-22; Buckley Dep. Tr. 100:16-101:20; 103:12-20.) Further, it is not sufficient for a party to point to alleged omissions when such alleged omissions lack causal connection to the incident at the subject of the dispute. *See e.g., Commonwealth v. Burton*, 2012 WL 2785900, at *5 (E.D. Va. July 6, 2012) (recognizing that a "[v]iolation of a statute alone does not warrant a finding that the violation itself was the proximate cause of a collision or allision or the damages"); *In re Complaint of Vulcan Materials Company*, 674 F. Supp. 2d 756, 762 (E.D. Va. 2009)

---

[9] As can be seen in Ex. G, the WAF was issued on January 29, 2021, and the accident occurred on March 15, 2021.

[10] A true and accurate copy of excerpts from Mr. Goff' deposition is attached as **Exhibit L**. Mr. Goff was designated as a corporate representative for the United States and as a fact witness, as he was a Maintenance, Material, and Management coordinator and was the leading chief petty officer for the main propulsion division on the USS McFaul. (Goff Dep. Tr. 6:1-7:2, 12:14-13:21.)

("[P]roximate cause is defined as 'that cause which in a direct, unbroken sequence produces the injury complained of and without which such injury would not have happened.'").

There is no evidence to prove essential elements of negligence against NASSCO-Norfolk. There are only conclusory allegations and mere speculation, which cannot support a claim. Plaintiff and the United States have had more than enough time to conduct discovery and present expert testimony against NASSCO-Norfolk. NASSCO-Norfolk should be dismissed from this case with prejudice.

### B. Moreover, NASSCO-Norfolk is not Subject to Vicarious Liability for the Actions of Its Subcontractors or Subsubcontractors.

#### i. Maritime Negligence and Contractor Liability

The elements of maritime negligence are essentially the same as land-based negligence under common law. *Evergreen Int'l, S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008). To state a claim, a plaintiff must allege:

> (1) the existence of a duty required by law that obligates a person to conform to a certain standard of conduct to protect others against unreasonable risks of harm; (2) a breach of said duty by engaging in conduct that falls below the applicable standard; (3) a causal connection between the improper conduct and the resulting injury; (4) an actual loss or injury to the plaintiff because of the improper conduct.

*Gauthreaux v. United States*, 712 F. Supp. 2d 458, 464 (E.D. Va. 2010) (citing *Murray v. United States*, 215 F.3d 460, 463 (4th Cir. 2000)).

Under maritime law, a party's negligence is actionable if it is the "legal cause" of the plaintiff's injuries. *Craven v. Cashman Equip. Corp.*, 2008 WL 11504847, at *10 (S.D. Miss. Aug. 28, 2008). "Legal cause" is more stringent than "but for" causation and requires that the negligence be a "substantial factor" in the injury. *Id.* Further, "[o]ne basic premise of maritime tort law is that liability is based on a finding of fault and causation." *Florida Comm'y Servs. Corp. of Walton Cnty. v. Skanska USA Civil Southeast, Inc.*, 2019 WL 13198254, at *2 (N.D.

Fla. Aug. 1, 2019).

"[P]rincipals generally cannot be held answerable on a *respondeat superior* theory for the negligent acts of an independent contractor committed in the course of its contractual duties." *Johnson v. Avondale Indus., Inc.*, 5 F.3d 1495, 1495 (5th Cir. 1993). An exception to this rule is when the principal has "operational control" over the independent contractor. *Id.* Stated differently, "'a principal who hires independent contractors over which he exercises no operational control has no duty to discovery and remedy hazards created by its independent contractors,' and accordingly cannot be held vicariously liable for the torts of the independent contractors." *Oceaneering Inter'l, Inc. v. Cross Logistics, Inc.*, 2014 WL 2462810, at *23 (S.D. Tex. June 2, 2014) (quoting *Wilkins v. P.M.B. Sys. Eng'g, Inc.*, 741 F.2d 795, 800 (5th Cir. 1984)). In determining whether a prime contractor retained control over a subcontractor:

> It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414, comment (c); *see also Oceaneering Inter'l, Inc.*, 2014 WL 2462810, at *24. Control is the key determination. *See Lejeune v. Prod. Servs. Network U.S., Inc.*, 2014 WL 3587495, at *4 (E.D. La. 2014); *see also Yacht Sales Inter'l, Inc. v. City of Virginia Beach*, 1997 WL 862761, at *7 (E.D. Va. Nov. 14, 1997).

NASSCO-Norfolk did not exercise "control" over the AIT employees that submitted the tag-out for the blow-in door or the AIT employees performing the gasket replacement. (Buie Dep. Tr. 211:2-15, 212:18-22, 213:4-22.) Nor did NASSCO-Norfolk exercise control over the HIS employees that instructed Ms. Gary to serve as fire watch. (Affidavit of Yeidy Cordero ¶¶ 28, 32, ECF No. 83-1; Affidavit of Rolando Fajardo ¶¶ 33-34, ECF No. 83-2.) Thus, NASSCO-

Norfolk cannot be liable for Ms. Gary's death.

### ii. Count I – Failure to Properly Tag-Out and Secure the Blow-In Door

In Count I, Plaintiff alleges that the United States "owed a duty to use reasonable care to prevent injuries to longshoremen such as Gary in areas that were under the active control of the ship" and the United States "breached [its] duties to Gary by negligently failing to properly tag-out and secure the blow-in door." (Am. Compl. ¶¶ 30-33.)  In its Third-Party Complaint, the United States alleges that "NASSCO, as the ship-repairer, was in control of the space in which the blow-in panel was located at the relevant time, and, as set forth above, was responsible for coordinating the timing and manner of work." (3d Party Compl. ¶ 26.) Thus, "the duty to use reasonable care to prevent injuries to ship repairers such as the decedent was shared" with NASSCO-Norfolk. (*Id.*)

The only NASSCO-Norfolk agent that played a role in the tag-out process is the WAF Coordinator. (Helms Dep. Tr. 41:20-25, 42:9-15; Helms Dep. Ex. 2 generally). The WAF Coordinator's role was administrative; the WAF Coordinator served as an intermediary taking the WAF form between the Repair Activity Representative and the Navy employees as the WAF progressed through the process. (Buie Dep. Tr. 203:2-24, 204:2-10; Goff Dep. Tr. 156:7-160:17.) Neither the WAF Coordinator nor any other NASSCO-Norfolk employee controls how a subcontractor conducts specific repair activities, which specific individuals will perform the work, how those individuals will be paid, or whether to discipline those individuals. (Buie Dep. Tr. 211:2-15, 212:18-22, 213:4-22.)

Under the Tag Out User's Manual, the Navy "is responsible for ensuring the adequacy and accuracy of all tag-outs, *including those proposed by the [Repair Activity Representative]*." (Preetam Dep. Ex. 13 § 1.3.1(d) (emphasis added.)  The contractor performing the repair activity

also shares in that responsibility to "ensur[e] the accuracy and adequacy of tag-outs." (*Id.* § 1.3.3(a)(3).) However, even the Repair Activity Representative is reliant on the Navy to determine what components need to be tagged out. (Buie Dep. Tr. 210:3-22.) Additionally, it is the Navy's PMS Card that describes the proper tag-out for replacement of blow-in door gaskets. (Preetam Dep. Tr. 24:4-12.) And, the PMS Cards are not provided or shown to contractors or subcontractors. (Buie Dep. Tr. 88:17-89:13.) Further, the decision to keep the blow-in door was GSM1 Preetam's decision. (Preetam Dep. Tr. 62:21-23.) Moreover, the Navy was in total control of what physically needed to be done to tag-out the equipment. (Buckley Dep. Tr. 75:15-22, 76:12-77:1; 96:10-97:16.) Thus, any negligence in the implementation of the tag-out is due to the action or inaction of the United States.

### iii. Count III – Placement of Fire Watch

In Count III, Plaintiff alleges that the United States "owed a duty to intervene to prevent injury to longshoremen such as Gary when it recognizes that they are operating in a hazardous way" and "breached [its] duties to Gary by failing to intervene to protect Gary" when she was placed as fire watch in an area where she could be crushed by the blow-in door. (Am. Compl. ¶¶ 41-44.) In its Third-Party Complaint, the United States again alleges that NASSCO-Norfolk was in control of the timing and manner of work and, thus, "[a]ny alleged duty to prevent injury to longshoremen in performance of the ship repair work for which NASSCO was responsible, belonged to NASSCO." (3d Party Compl. ¶ 27.)

Any negligence in the placement of Ms. Gary near or through the blow-in door is attributable to the acts of Ms. Gary's employer and supervisor HIS or Ms. Gary herself, not NASSCO-Norfolk. HIS assigned her to serve as a fire watch and directed her placement. (Affidavit of Yeidy Cordero ¶ 32, ECF No. 83-1; Affidavit of Rolando Fajardo ¶ 33, ECF No.

83-2.) NASSCO-Norfolk was not involved in these decisions. As such, any negligence related Ms. Gary's role as fire watch is due to the action or inaction of HIS.

## V.     CONCLUSION

For the foregoing reasons, Metro Machine Corp., d/b/a General Dynamics NASSCO-Norfolk, respectfully requests that this Court grant its motion and enter summary judgment in its favor, dismiss it fully from this case with prejudice as to all claims, and grant such further relief that the Court deems appropriate.

Respectfully submitted,

METRO MACHINE CORP.,
D/B/A GENERAL DYNAMICS NASSCO-NORFOLK

By:     /s/ *Lynn K. Brugh, IV*
Lynn K. Brugh, IV
Virginia State Bar No. 36778
Counsel for Third Party Defendant
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

John Arch Irvin
Virginia State Bar No. 97044
Counsel for Third Party Defendant
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6140
Facsimile: (804) 420-6507
jirvin@williamsmullen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of January 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

By: /s/ *Lynn K. Brugh, IV*
Lynn K. Brugh, IV
Virginia State Bar No. 36778
Counsel for Third Party Defendant
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com
