```
 1                IN THE UNITED STATES DISTRICT COURT
 2               FOR THE EASTERN DISTRICT OF VIRGINIA
 3                          Norfolk Division
 4
 5   DOUGLAS I. HORNSBY, Administrator    )
     of the Estate of CYNTHIA GARY,       )
 6                                        )
            Plaintiff,                    )
 7                                        )
     -vs-                                 )
 8                                        )
     UNITED STATES OF AMERICA,            )   CASE NO.:
 9                                        )
            Defendant/Third-Party Plaintiff, )  2:22cv427
10                                        )
     and                                  )
11                                        )
     METRO MACHINE CORP., d/b/a           )
12   GENERAL DYNAMICS NASSCO - Norfolk,   )
                                          )
13   and                                  )
                                          )
14   ADVANCED INTEGRATED TECHNOLOGIES, LLC, )
                                          )
15          Third-Party Defendants.       )
16
17              DEPOSITION UPON ORAL EXAMINATION OF
18                      GSMC ANITA PREETAM
19              TAKEN ON BEHALF OF THE PLAINTIFF
20
21                       NORFOLK, VIRGINIA
22              SEPTEMBER 24, 2024, 8:36 A.M.
23
24
25   Reported by:  Suzanne M. Myers, RMR
```

DELLORO-MCDANIEL
COURT REPORTING SERVICES

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.

1   A.   I don't know, ma'am.
2   Q.   Are you aware of anything that the RA did
3   improperly as it relates to this particular tag-out?
4   A.   Not off the top of my head.
5   Q.   Earlier we talked about kind of where you were
6   assigned to on the vessel.  I asked you if you had a desk.
7        Would you pretty much just stay in that one
8   location all day, or would you be walking around the vessel?
9   A.   No.  On the day of our duty that we are the
10  authorizing officer, we are typically in that space.
11  Q.   And when you are not on duty as the authorizing
12  officer, where would you be stationed?
13  A.   In the yards, we were on the barge.
14  Q.   And what were you doing on the barge?
15  A.   Eating meals.  That's where we change our
16  clothes.
17       There's nowhere on the ship to do any of that
18  stuff.
19  Q.   But you wouldn't have been doing any of your
20  regular duties, correct?
21  A.   No, ma'am.
22  Q.   Were you ever involved in any testing of the
23  blow-in door in question?
24  A.   No.
25  Q.   Either before this incident or after.

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.

1  door in the open position while work by contractors was
2  being conducted.
3              Did I read that properly?
4       A.    You did read it properly.
5       Q.    And do you agree that the "she" that is
6  referenced in there is you?
7              MS. LAWRENCE:  Objection to form.
8              THE WITNESS:  That is what this statement says.
9
10 BY MR. BRUGH:
11      Q.    That's -- all right.  But what I'm asking you
12 is:  Do you agree that the person that wrote this statement
13 is speaking about you?
14             MS. LAWRENCE:  Objection to form, and foundation.
15             THE WITNESS:  Yeah.
16             MS. LAWRENCE:  You can answer.
17
18 BY MR. BRUGH:
19      Q.    Did you decide -- was it you that did decide that
20 it was best to leave the air pressure on the system?
21             MS. LAWRENCE:  Objection to form.
22             You can answer.
23             THE WITNESS:  Well, it's not me specifically.
24 It's just how it should have been tagged out.  If you -- the
25 only way to keep the door open is to tag it in the open

This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.

1 position.
2
3 BY MR. BRUGH:
4 Q. Right. But did somebody have to make a decision
5 on whether to leave the air pressure on or turn it off?
6 A. How -- if you need the door open, you can't turn
7 it off. There was -- I'm sorry. I'm just --
8 Q. That's fine. That's fine.
9     Let me ask you this, then, and correct me if I'm
10 wrong, but I believe earlier today, from Mr. Hendrick's
11 questioning, you stated that the blow-in door could be put
12 into the open position, and the air pressure could be turned
13 off after it was in the open position, correct?
14 A. I did not say that.
15 Q. Well, let me ask you that now.
16     Once a blow-in door is opened, is it -- can a
17 blow-in door's air pressure be turned off?
18 A. I don't know. That was the question he asked,
19 and I said I don't know.
20 Q. Okay. So you are not sure whether it can even be
21 turned off or on -- well, strike that.
22     Once a blow-in door is opened, you don't know
23 whether the air pressure can even be turned off at that
24 point?
25 A. To my knowledge, if you turn off the air

This document was created with an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.

169

```
 1       A.    No.
 2       Q.    Where do you go?
 3       A.    We go to the barge?
 4       Q.    That's the berthing barge that you referred to
 5   earlier?
 6       A.    Yes.
 7       Q.    The ship's equipment, does it remain operational,
 8   or is it laid up?  What happens then?
 9             MS. EATON:  Object to form.
10             THE WITNESS:  No.  All the equipment is, for the
11   most part, put in layup or tagged out.
12
13   BY MS. LAWRENCE:
14       Q.    Okay.  And for the -- for the maintenance
15   availability, were the ship's generators operational, or did
16   you get power from somewhere else?
17       A.    We got power from the pier.
18       Q.    Okay.  And I believe you said you had set up a
19   sort of substitute Central Control Station that was
20   somewhere on the ship?  Is that what you testified?
21       A.    Yes.
22       Q.    Where was that?
23       A.    On the mess decks.
24       Q.    Okay.  I just want to go back to Preetam
25   Exhibit 2 and Preetam Exhibit 7.
```

DELLORO-MCDANIEL
COURT REPORTING SERVICES
This document was created by an application that isn't licensed to use novaPDF.
Purchase a license to generate PDF files without this notice.