IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DOUGLAS I. HORNSBY, Administrator of
the Estate of CYNTHIA GARY,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Case No. 2:22-cv-427

UNITED STATES of AMERICA, et al.,

    Defendant and Third-Party Plaintiff,

v.

METRO MACHINE CORP., d/b/a
GENERAL DYNAMICS NASSCO – Norfolk

and

ADVANCED INTEGRATED TECHNOLOGIES, LLC,

    Third Party Defendants.

## DECLARATION OF COMMANDER STEPHEN ANDREWS

I, Commander Stephen J. Andrews United States Navy (Retired), hereby declare as follows:

1. I serve in the Office of the Chief of Naval Operations, Fleet Readiness Division, as the civilian Deputy Branch Head for Maritime Readiness. In that capacity, my office is responsible for overseeing the maintenance policy and programs of the U.S. Navy. Prior to my career in civil service, I served in the U.S. Navy as a Surface Warfare Officer, on active duty and in the reserve component.

2. The Department of the Navy ("DON") "is composed of naval, land, air, space,

1

and cyberspace forces both combat and support ... to include organic forces and capabilities necessary to operate and support the Navy and Marine Corps, the other Military Services, and joint forces." DoDI 5100.01 ¶ 5(a). The Navy and the Marine Corps team is our Nation's principal maritime force - employing global reach, persistence presence and operational flexibility to secure our Nation from direct attack; secure strategic access and retain global freedom of action; strengthen alliances and partnerships; establish favorable security conditions; deter aggression and violence by state, non-state, and individual actors and, should deterrence fail, prosecute the full range of military operations in support of U.S. national interests as defined by the National Security Strategy of the United States of America, the National Defense Strategy, and the National Military Strategy of the United States of America. *Id.*

3.  To facilitate execution of our duties as our Nation's principal maritime force, title 10, United States Code, assigns to the Secretary of the Navy ("SECNAV") (subject to the authority, direction, and control of the Secretary of Defense ("SECDEF") and the provisions of 10 U.S.C. §§ 161 *et. seq.*), responsibility for, and the authority necessary to conduct, all affairs of the DON, including: (1) recruiting, (2) organizing, (3) supplying, (4) equipping (including research and development), (5) training, (6) servicing, (7) mobilizing, (8) demobilizing, (9) administering (including the morale and welfare of personnel), (10) ***maintaining***, (11) construction, outfitting and repairs of military equipment, (12) construction, maintenance, and repair of buildings, structures, and utilities as well as the acquisition, management, and disposal of real property and natural resources. 10 U.S.C. § 8013(b) *et. seq.*; DoDI 5100.01; U.S. Navy Regulations 1990 Article 0302 (emphasis added). Further, subject to the authority, direction, and control of the SECDEF, the SECNAV is responsible for the formulation of policies and programs by the DON that are consistent with national security objectives and policies estab-

lished by the President of the United States of America ("POTUS") or SECDEF. 10 U.S.C. § 8013(c)(2). Ultimately, the SECNAV is assigned the responsibility of ensuring the effective and timely implementation of policy, program, and budget decisions and instructions of the POTUS or the SECDEF relating to the functions of the DON. 10 U.S.C. § 8013(c)(3).

4.      To assist the SECNAV in executing its responsibilities, title 10 establishes the Office of the Chief of Naval Operations ("OPNAV"). 10 U.S.C. § 8031(a). OPNAV is specifically responsible, under the SECNAV, the Under Secretary, and the Assistant Secretaries of the Navy and to the Chief of Naval Operations, to "prepare for such employment of the Navy, and for recruiting, organizing, supplying, equipping…, training, servicing, mobilizing, demobilizing, administering, and *maintaining* of the Navy …." 10 U.S.C. § 8032(a)(1) (emphasis added).

5.      Beyond this language provided in section 8032, title 10 does not mandate how OPNAV shall execute its duty to maintain the Navy. Satisfaction of this duty is vested in the judgment of the SECNAV and OPNAV in accordance with the principles laid out by the National Security Strategy of the United States of America, the National Defense Strategy, and the National Military Strategy of the United States of America. *See generally* 10 U.S.C. §§ 101-20605. In short, federal statute, regulation or policy does not dictate the manner in which OPNAV is to develop maintenance policy and procedures. Rather, they afford the executive wide discretion in how to carry out its duty to maintain Naval assets.

6.      Operating under this discretionary authority, the Chief of Naval Operations issued OPNAVINST 4700.7 (Series) ("Maintenance Policy for Navy Ships"), which sets forth the "policies and establish[es] responsibilities for planning, executing, and evaluating maintenance of United States (U.S.) and foreign navy ships." OPNAVINST 4700.7 § 1(a). This policy directs that "[a] tailored maintenance program" be "developed and maintained for each ship

3

class… covering the maintenance tasks and environments or capabilities required to conduct required maintenance." *Id.* § 201.4. Furthermore, the Maintenance Policy for Navy Ships designates the Ship's Maintenance and Material Management System ("3M System") as the official tailored maintenance program for organizational-level, non-nuclear maintenance aboard all U.S. Navy Ships. *Id.* § 203.1. The 3M System overarching goal is to "maintain the highest practical level of material readiness and safety to meet operational availability requirements, while minimizing total life cycle cost over the expected life of the ship." *Id.* § 701(a).

7. Acting under the discretional authority discussed above, the CNO also issued OPNAVINST 4790.4 (Series) ("Maintenance and Material Management System Policy") which establishes policy and assigns responsibilities for the 3M System. OPNAVINST 4790.4 (Series). The Maintenance and Material Management System Policy mandates that all "[c]ommon support equipment used by both ship's force and naval aviation units must have Planned Maintenance System ("PMS") support …." *Id.* ¶ 4(a). The Maintenance and Material Management System Policy defines PMS as "a standardized method for planning, scheduling and accomplishing preventative maintenance by Ship's force." *Id.* ¶ 6(a). Furthermore, the Maintenance and Material Management System Policy delegates the development of PMS maintenance procedures to "the System Commands ("SYSCOM") responsible for the development and procurement of the systems or equipment for active, new construction, major conversion and activation of ships, boats, and crafts." *Id.* Specifically, the Maintenance and Material Management System Policy directs Naval Sea Systems Command ("NAVSEA") to "[m]anage and direct the development, implementation, operational maintenance and improvements of all aspects of the 3M System throughout the Navy." *Id.* ¶ 7(b)(7).

8. As the designated SYSCOM, NAVSEA develops the shipboard maintenance pro-

cedures in accordance with Reliability-Centered Maintenance ("RCM") principles. NAVSEAINST 4790.8 (Series) § 2-1; DoDM 4151.25 (mandating the use of RCM principles across the DoD).

9. RCM principles are "[a] method for determining maintenance requirements based on the analysis of the likely functional failures of components, equipment, subsystems, or systems having a significant impact on safety, operations, and life cycle cost." OPNAVINST 4700.7 (Series) at Appendix C ¶ 60. "RCM is the engineering discipline that allows for the evaluation of evidence for the purpose of scheduling and executing maintenance." *Id.* Furthermore, "RCM ensures that a system achieves the desired levels of safety, reliability, environmental soundness, and operational readiness in the most cost-effective manner." DoDM 4151.25 § 3.1.A. RCM is driven by three primary policy factors: (1) safety, or a similarly critical consideration such as environmental law, (2) the ability to complete the mission, and (3) economics. *Id.* § 3.1.B(5).

10. In summary, federal statue, regulation or policy does not specifically prescribe a course of action for the OPNAV to follow in developing maintenance procedures or policy for DON. Internal DON guidelines mandate policy analysis in the development of such maintenance procedures. As set forth above, the Maintenance Policy for Navy Ships, the "3M System," and the "PMS System" all constitute means determined by OPNAV to exercise the discretionary authority conferred upon the U.S. Navy by Congress in 10 U.S.C. §§ 8031 and 8032.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 16th day of December, 2024.

5

/s/ Stephen J. Andrews CDR USN (RET)
Stephen J. Andrews, Commander, U.S. Navy (Retired)

6